73 Ill. App.3d 467 (1979)
391 N.E.2d 1108
In re G.L., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
G.L., Respondent-Appellant.)
No. 77-369.
Illinois Appellate Court  Third District.
Opinion filed July 6, 1979.
*468 Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.
Edward Petka, State's Attorney, of Joliet (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
Mr. JUSTICE STENGEL delivered the opinion of the court:
G.L., a 15-year-old minor, was adjudicated delinquent upon a finding that he was guilty of burglarizing his parents' home, and he was committed to the Department of Corrections. He appeals from both the adjudicatory order and the dispositional order.
According to the record, G.L. has a long history of criminal activity. Between April 9, 1976, and June 15, 1977, five delinquency petitions were filed alleging that he had committed four different burglaries and two incidents of school vandalism. He has serious alcohol and drug addiction problems, and after he refused to cooperate with a voluntary program of psychiatric and drug treatment, he was remanded to the custody of the director of the Counterpoint drug program in Chicago, Illinois, on May 24, 1977. Within two weeks he ran away from the Counterpoint center and broke into his parents' home at 428 Galahad in Bolingbrook, Illinois. He was charged with burglary in a juvenile proceeding, and at the adjudicatory hearing, he was found guilty.
As set out in the agreed statement of facts submitted in lieu of a transcript, G.L.'s mother testified at the hearing that on June 2, 1977, she and a younger son were returning home when they saw G.L. running down the street carrying something. They saw him get into a yellow station wagon which someone else was driving. Upon reaching home, they discovered the back door, which had been locked, standing open and a basement window broken. Missing were two rifles, three target pistols, and $25 cash from the parents' bedroom.
The mother also testified that she and her husband had told G.L. not to return home until he was off drugs and that, even when he was living at home, he was never allowed in the parents' bedroom. At the time of this incident, the father was hospitalized with a heart attack. After G.L.'s arrest, he admitted entering the home and stealing the guns because he *469 needed money. The arresting officer stated that G.L. was sober, coherent and not "high" at the time of his arrest. The delinquency petition listed G.L.'s residence as "428 Galahad, Bolingbrook, Illinois," which is his parents' address.
At the conclusion of the hearing, the trial court found G.L. to be delinquent and made him a ward of the court. After a diagnostic evaluation had been completed, the final dispositional hearing was held. The court received a psychiatric evaluation and a probation report, both of which recommended commitment to the Department of Corrections because no other alternatives were available. The parents had repeatedly sought professional help for the boy and had cooperated fully with the authorities, but they were unable to control their son. Respondent had run away from every outpatient or "halfway house" program, and because he refused to admit that he had an alcohol and drug problem, it was predicted that he would continue to run away unless placed in a tightly structured environment. The court ordered G.L. committed to the Department of Corrections.
On appeal, the sole issue is whether the State proved beyond a reasonable doubt that G.L.'s entry into his parents' residence was unauthorized. Section 19-1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 19-1(a)) provides in part:
"A person commits burglary when without authority he knowingly enters * * * a building * * * with intent to commit therein a felony or theft."
Respondent argues that, since the supplemental delinquency petition listed 428 Galahad, Bolingbrook, Illinois, as both his residence and as the premises allegedly burglarized, a presumption arose that his entry into the family home was authorized. The fact that he was instructed not to return home until he was off drugs is argued to be insufficient to overcome the presumption in the absence of anything to indicate he was still using drugs. We disagree.
 1, 2 Lack of authority can be established circumstantially by evidence of entry with intent to commit a theft (People v. Davis (1977), 54 Ill. App.3d 517, 369 N.E.2d 1376), and by evidence of a surreptitious method of entry (People v. Flowers (1977), 52 Ill. App.3d 301, 367 N.E.2d 453). In the case at bar, we believe the evidence sufficient to justify a finding of unauthorized entry. First, legal custody of respondent was, by court order, no longer with his parents but rather with the director of a drug rehabilitation program, and he was not living at home. Second, his parents had expressly forbidden him to enter the family home until he was no longer on drugs. The fact that he ran away from a drug treatment program after a few days and promptly committed a crime to obtain *470 money gives rise to an obvious inference that he had not overcome his addiction to drugs. This evidence was sufficient to prove his lack of authority to enter his parents' home.
Respondent also argues that the State failed to prove title to the burglarized residence and thus did not rule out the possibility that respondent himself was the titleholder. The burglary statute quoted earlier does not require proof of ownership, and our courts have often ruled that legal title need not be proved; rather a right to possession and occupancy in another must be shown as against the accused. (People v. Lymore (1962), 25 Ill.2d 305, 185 N.E.2d 158; People v. Apple (1968), 91 Ill. App.2d 269, 233 N.E.2d 440.) It seems indisputable that the parents' right to occupancy and possession was shown here as against the respondent.
 3, 4 Respondent cites In re Salyer (1977), 44 Ill. App.3d 854, 358 N.E.2d 1333, where this court held that a mother could consent to the search of the locked bedroom of her minor child. It was stated in the opinion that a mother had "at least common authority" over the room. Respondent insists that the reverse is also true and that the child has common authority to enter the family home unless clearly shown to the contrary. Respondent misapprehends our holding in Salyer which upheld parental authority over children and particularly over a child's bedroom. Nothing in that opinion purports to recognize a child's authority over the parents or over the parents' bedroom. Parents do have a duty to provide shelter for a minor son, but once legal custody is placed outside the home, that duty is reduced to a financial responsibility. Clearly, parents have a right of possession of their home superior to that of the child. The law does not require them to submit to the adolescent tyranny of a drug addict son who seeks to enter the home for the purpose of committing a theft.
Finally, respondent asks us to consider the case of People v. Gauze (1975), 15 Cal.3d 709, 542 P.2d 1365, 125 Cal. Rptr. 773, where the Supreme Court of California held that a person cannot burglarize his own home. In that case the defendant shared an apartment with two other persons and had the right to enter the premises at all times. He was convicted of assault with a deadly weapon and burglary for having entered his own apartment with a shotgun and firing at one of his roommates with whom he had been fighting. The court construed the California burglary statute as requiring an entry which invades a possessory right in a building and that it be committed by a person who has no right to be in the building. The defendant's conviction was reversed because he had an absolute right to enter his own apartment. Gauze is distinguishable from the case at bar, inter alia, because in Gauze the accused was an occupant of the premises which he allegedly burglarized, while G.L. was not an occupant.
*471 For the reasons set forth in this opinion, we affirm the judgment of the Circuit Court of Will County.
Affirmed.
STOUDER, P.J., and SCOTT, J., concur.