[No. 49919-5. En Banc. April 12, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. TERRI
L. STEINBACH, *Petitioner*.

*Julie A. Kesler* of *Washington Appellate Defender
Association*, for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Linda K.
Jacke, Deputy*, for respondent.

ROSELLINI, J.—Petitioner Terri Steinbach challenges her
conviction of second degree burglary. The conviction arises

from an incident in which Terri, then 14, entered her mother's home after being placed in alternative residential placement. We hold that the facts of this case cannot sustain a conviction of second degree burglary and reverse. *State v. Steinbach,* 35 Wn. App. 473, 667 P.2d 641 (1983).

The facts leading up to this action are as follows: On March 2, 1982, petitioner Terri Steinbach and three or four companions entered, through a window, a residence located at 11063 18th Southwest in Seattle. Verna Garcia, Terri's natural mother, lived in the residence at the time of the entry. The group removed several items from the house, including an afghan belonging to Terri, three rifles, several cans of beer and soda pop and a cigarette lighter. Police officers recovered these items in an alley behind the house.

Earlier in 1981, Terri had lived with her mother in the residence on 18th Southwest. In the fall of that year, however, Terri and her mother encountered difficulties with the living arrangement and Terri petitioned the court for alternative residential placement under the provisions of RCW 13.32A. The order was entered approximately 2 weeks before the burglary. Terri's mother opposed the order, but agreed to abide by its terms. As a result of the March 2 entry, Terri was charged with possession of stolen property and with second degree burglary.

During the fact–finding hearing, Terri's mother testified that she had told Terri that she "could not stay there because she was not allowed by Court to remain in our home." Report of Proceedings, at 15. She told Terri she could visit if she called first. Terri's mother had not absolutely prohibited Terri from entering the home.

The language of the alternative residential placement order did not specify whether Terri could return or visit the home. The order clearly stated that Terri was to reside in a foster home.

The trial court found that Terri entered the home with the intent to commit a crime and entered judgment convicting her of second degree burglary under RCW 9A.52-.030. The Court of Appeals affirmed. It rejected Terri's

argument that as a child, she could not unlawfully enter her mother's home. This court granted Terri's petition for review. We find the evidence insufficient to support a conviction and reverse.

Terri was convicted of second degree burglary in violation of RCW 9A.52.030. The burglary statute provides in relevant part:

> A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he *enters or remains unlawfully* in a building other than a vehicle.

(Italics ours.) The second degree burglary statute requires the State to prove (1) intent to commit a crime and (2) unlawful entry. Terri does not deny that the State proved entry. She contends that the facts, as presented at trial, did not establish *unlawful* entry.

The phrase "enters or remains unlawfully" is defined in RCW 9A.52.010(3):

> (3) "Enters or remains unlawfully". A person "enters or remains unlawfully" in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain.

Terri asserts that her entry into her mother's home was privileged and therefore could not be unlawful. We agree.

The Court of Appeals ruling was based upon the faulty reasoning that solely because Terri had been ordered to reside outside of the home under RCW 13.32A, she lost her privilege to enter it. According to the court, an order of

> alternative residential placement completely, though temporarily, removes the minor child from the parental home and, in effect, establishes a new legal residence for the child . . .

*State v. Steinbach, supra* at 478. As such, Terri was said to be barred from claiming any right or privilege to enter her mother's residence. *Steinbach,* at 479.

This holding misperceives the nature of an alternative residential placement order. Such an order does not automatically terminate a child's privilege to enter the

parental home. To have this effect, the order must specifically state this fact. This interpretation of the order's legal effect coincides with our previous interpretation of the alternative residential placement statute. *In re Sumey,* 94 Wn.2d 757, 621 P.2d 108 (1980). We observed that such an order had only limited effect on the parent–child relationship. *Sumey* involved the constitutionality of RCW 13.32A. We upheld the statute and noted, generally, that children possess a constitutionally protected right to parental care and custody. This right was said to be a "sacred right." *Moore v. Burdman,* 84 Wn.2d 408, 411, 526 P.2d 893 (1974). *See also Stanley v. Illinois,* 405 U.S. 645, 651, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972). The reasoning of this decision leads us to conclude, contrary to the interpretation advanced by the Court of Appeals, that RCW 13.32A does not result in a transfer of legal rights and duties such as occurs in termination of parental rights proceedings under RCW 13.34.

Moreover, *Sumey* reflects our consistent belief in the importance of views of the parent–child relationship. *See In re Adoption of Buehl,* 87 Wn.2d 649, 555 P.2d 1334 (1976) and *In re Rankin,* 76 Wn.2d 533, 458 P.2d 176 (1969). The interpretation given the statute by the Court of Appeals disrupts the parent–child relationship beyond that intended by the law.

Finally, the limited effect of an alternative residential placement order distinguishes this case from *In re G.L.,* 73 Ill. App. 3d 467, 391 N.E.2d 1108 (1979), which was relied upon by the Court of Appeals. In *G.L.,* the Illinois appellate court affirmed a minor's conviction of burglary of the parental home. In determining whether there was sufficient evidence to justify a finding of unlawful entry, the Illinois court focused upon the fact that legal custody of the juvenile had been placed with the State. No change in legal custody occurred in Terri's case.

Moreover, the juvenile in *G.L.* was expressly told not to return home. Terri, on the other hand, was never informed by her mother that she was absolutely prohibited from

returning. Nor did the placement order so specify. Consequently, Terri could assume that she was privileged to enter her parent's home.[1] The court's reliance on this case was therefore misplaced.

Our conclusion that Terri was improperly convicted under the burglary statute makes it unnecessary to reach Terri's second assignment of error regarding the concurrency of the burglary statute and RCW 13.32A.250.

Petitioner's conviction is reversed.

WILLIAMS, C.J., UTTER and DORE, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DOLLIVER, J. (dissenting)—Prior to March 2, 1982, Terri Steinbach petitioned for and was granted by court order an alternative residential placement (ARP). Terri had been informed by her mother that she was "allowed to visit us but not to be there at any time nor to reside there." Her mother also testified Terri could visit if she called first but that Terri had not called to visit on March 2, 1982. It was on this date that Terri and several companions entered the house by forcible entry through a boarded–up window. The question before the court is whether this forcible entry by Terri was "otherwise privileged" (RCW 9A.52.010(3)).

The majority answers in the affirmative and cites *In re Sumey*, 94 Wn.2d 757, 621 P.2d 108 (1980) in support of its position. *Sumey* involved the question of whether the residential placement procedures of former RCW 13.32 violate due process by authorizing placement of a minor without a prior finding of parental unfitness. In that case, the child had petitioned the court and been granted an ARP. Her parents challenged the constitutionality of the statute. As the majority points out, the case discusses the importance of the parent–child relationship. The holding, however, is that the "limited infringement upon parental rights" by the

---

[1]This opinion does not address the issue of whether conviction for burglary is appropriate where either the alternative residential placement order or the parent expressly prohibits the child's return to the home.

ARP does not violate due process. Implicit in this holding is that under an ARP the "rights" which parent or child may have under usual circumstances are changed.

Furthermore, as the Court of Appeals noted in *State v. Steinbach,* 35 Wn. App. 473, 667 P.2d 641 (1983), this court has said that an ARP "is predicated on the existence of family conflict of sufficient magnitude that the parents and child are unable to live in the same home even with the assistance of counseling or other rehabilitative social services." *In re Sumey, supra* at 761.

Thus, when there has been an ARP, the parents have no right to prevent the placement nor does the minor child have any privilege to be in the house until the ARP is discontinued under the terms of RCW 13.32A.190. Even if, however, as the majority argues, the ARP order did not in and of itself terminate Terri's privilege to enter her mother's home, this privilege was specifically removed by the mother at the time of the ARP. No authority is cited by the majority nor am I aware of any which holds that under the circumstances of this case a child has a legal privilege to forcibly enter a parent's home for the purpose of committing a theft.

The majority distinguishes *In re G.L.,* 73 Ill. App. 3d 467, 391 N.E.2d 1108 (1979) because the legal custody of the minor had been placed with the State and because G. L. was expressly told by his parents not to enter the family home until he was no longer on drugs. The factual distinctions between this case and *In re G.L.* are irrelevant. Here, the minor child, at her own request, was placed outside the homes of either of her natural parents. The testimony indicates her mother, whose home was broken into, did not know where Terri was living. There is no dispute but that Terri entered the residence of her mother at a time when she was not allowed in the home and that she entered with intent to commit a crime by forcibly removing a board from a window in the back of the residence.

I concur with the observation of the Court of Appeals that there

was sufficient evidence by which a rational trier of fact could find beyond a reasonable doubt that Steinbach was not licensed, invited, or otherwise privileged to enter and remain in her mother's residence on the date of the burglary.

*State v. Steinbach,* 35 Wn. App. at 480.

The majority cites no authority nor do I believe either authority or common sense would find that under these circumstances Terri had a privilege to enter her mother's home. I would affirm.

BRACHTENBACH, DIMMICK, and PEARSON, JJ., concur with DOLLIVER, J.