[No. 11333-3-II. Division Two. February 22, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN HOWE III, *Appellant.*

*Bertha Fitzer,* for appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney,* and *Michael E. Clift, Deputy,* for respondent.

ALEXANDER, C.J.—John Howe III (Howe), a juvenile, appeals his convictions for the second degree burglaries of the residences of his father and aunt and uncle. He contends on appeal that a Mason County Superior Court Judge erred in concluding that his entry into the residences was unlawful and, thus, constituted burglary. We reverse Howe's conviction for the burglary of his father's home but affirm his conviction for the burglary of his aunt and uncle's home.

Howe was charged in Mason County Juvenile Court with three counts of second degree burglary.[1] The information alleged that Howe burglarized the homes of: his father, John Howe, Jr.; his aunt and uncle, Terry and Marv Ackerman; and his grandfather, John Howe, Sr. Howe proceeded to trial on the three burglary charges. He was found guilty of each burglary by a juvenile court commissioner.

Howe sought revision of the Commissioner's decision in the Mason County Superior Court. After reviewing the transcript of the testimony taken at the Commissioner's hearing, a Superior Court Judge entered extensive findings of fact and conclusions of law and affirmed the Commissioner's ruling. Howe appeals only the convictions for the burglaries of the homes of his father and aunt and uncle.

The Superior Court's findings reveal that in January 1987, Howe moved to Shelton. Before moving to Shelton, he had lived in Alaska with his mother. Upon arriving in Shelton, Howe began residing with his father. Shortly thereafter, difficulties arose between father and son, following which Howe moved out of his father's home and into the home of his aunt and uncle, the Ackermans.

While Howe was living with the Ackermans, he was furnished with a key to their home. He was also given complete freedom to come and go as he pleased. Not long after Howe began residing with the Ackermans he took their truck without permission. Howe was arrested for the taking of the truck and was placed in juvenile detention.

While Howe was in detention, his father advised him that he was no longer welcome to return to the father's home. Following Howe's release from detention his father reiterated that Howe would not be welcome in his home

---

[1]Howe was also charged with the following offenses against the above family members: one count of first degree theft, three counts of third degree theft, two counts of malicious mischief, and one count of taking a motor vehicle without permission. Howe pleaded guilty to these charges.

until such time as he could exhibit law–abiding behavior. The Ackermans, although not directly communicating with Howe, changed the locks to their home following Howe's release from detention. Howe did not thereafter reside in his father's home or his aunt and uncle's home, nor did any of his belongings remain in their homes.

Howe subsequently entered his father's home through an unlocked window and took his father's car, boat, canteen and some gas. The following day, Howe entered his aunt and uncle's home through an unlocked window and took some alcohol, food, gas, a battery and a tape player.

The Superior Court found that: "The communications made by the father to his son clearly indicated to the son that he was no longer welcome in his father's home [and that] John knew and understood his father's communications." It also found that Howe had no right to expect to go back into the Ackerman home.

Based on the above findings, the Superior Court concluded that the father had revoked any privilege Howe might otherwise have had to enter the father's home. The Superior Court similarly concluded that although Howe had previously been granted a conditional right in the nature of a license to enter the Ackerman home, it had been implicitly revoked by Howe's theft of the truck, and the Ackermans' conduct in changing the locks on their home. Accordingly, the Superior Court Judge concluded that Howe had entered both residences unlawfully with the intent to commit a crime and, thus, was guilty of both burglaries.

Howe's sole assignment of error is to the Superior Court's conclusion that his entry into the two residences was unlawful.[2] He contends, in essence, that the facts found by

___

[2]This conclusion of law was incorrectly denominated a finding of fact. The label applied by the Superior Court is not determinative, and this court must treat it for what it really is. *See Para–Medical Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 397, 739 P.2d 717, *review denied*, 109 Wn.2d 1003 (1987). If a term carries a legal implication, a determination of whether it has been established is a conclusion of law. *Para–Medical Leasing, Inc. v. Hangen, supra.* A finding that .

the Superior Court do not support a conclusion that his privilege to enter the two residences was revoked and that his entry of the residences was, thus, unlawful. For reasons that follow, we conclude that the facts support the conclusion that Howe's permission to enter the home of his aunt and uncle had been terminated at the time Howe entered their home and took their property and, thus, that his entry was unlawful. We find the facts insufficient, however, to support a similar conclusion with regard to the home of Howe's father.

The elements of burglary in the second degree are set forth in RCW 9A.52.030(1) as follows:

> A person is guilty of burglary in the second degree if, with the intent to commit a crime against a person or property therein, *he enters or remains unlawfully* in a building other than a vehicle.

(Italics ours.) In order to obtain a conviction under this statute, the State must prove that the defendant (1) intended to commit a crime, and (2) entered or remained unlawfully. *State v. Steinbach*, 101 Wn.2d 460, 462, 679 P.2d 369 (1984).

Howe does not contest the trial court's conclusion that he entered both of these premises with the intent to commit a crime. Consequently, we will devote our attention to the issue of unlawful entry. The term "enters or remains unlawfully" is defined in RCW 9A.52.010(3) as:

> A person "enters or remains unlawfully" in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain.

A. Burglary of Father's Home: In order to resolve the question concerning the lawfulness or unlawfulness of Howe's entry into his father's home, we must address an issue reserved in *State v. Steinbach, supra.* To wit: whether or not a child may be convicted of the burglary of his parent's home where the parent has expressly prohibited the child from returning to the family home, but where there

---

Howe's permission to enter the residences in question had been revoked constitutes a conclusion of law. Accordingly, we treat it as such.

has been no formal termination of the parent–child relationship.[3] We answer this question in the negative.

In *Steinbach*, our Supreme Court reversed the conviction of a 14–year–old girl for the burglary of her mother's home. At the time of the alleged incident, the child in *Steinbach* had been placed in an alternative residence pursuant to a court order. In addition, the child had been told by her mother that she could not stay in the mother's home but that she could visit the home if she called first. *Steinbach,* 101 Wn.2d at 461. The child thereafter entered her mother's home through a window, while her mother was away, took various items belonging to her mother. *Steinbach,* 101 Wn.2d at 461.

In reversing the child's conviction for burglary of the mother's home the court concluded that the child possessed a "privilege" to enter the mother's home. *Steinbach,* 101 Wn.2d at 462–63. The court further concluded that the mother's communications did not amount to an absolute prohibition against the daughter entering the home so as to terminate the "privilege", nor did the Alternative Residential Placement (ARP) order, by which the girl was placed in alternative housing, so specify. *Steinbach,* 101 Wn.2d at 463–64. Accordingly, the court, without addressing whether a child's privilege to enter the parental home could ever be prohibited, concluded that the girl could assume that she was privileged to enter her parent's home and, thus, had not entered unlawfully. *Steinbach,* 101 Wn.2d at 464.[4]

Unlike *Steinbach*, the facts of this case clearly support a finding that the father expressly told Howe that he was not permitted to enter the father's home. Accordingly, were we

---

[3]With regard to the issue presented to this court, the court in *Steinbach* stated, in pertinent part: "This opinion does not address the issue of whether conviction for burglary is appropriate where either the alternative residential placement order or the parent expressly prohibits the child's return to the home." *Steinbach,* 101 Wn.2d at 464 n.1.

[4]The dissenters concluded that the mothers' admonitions removed the child's privilege to enter the mother's home. *Steinbach,* 101 Wn.2d at 465 (Dolliver, J., dissenting, joined by Brachtenbach, Dimmick, and Pearson, JJ.).

to construe a child's authority to enter the parental home to be in the nature of a "privilege," we would have little trouble in finding such privilege to have been revoked and, thus, Howe's entry of his father's home unlawful. Our reading of *Steinbach,* however, does not lead us to such a conclusion.

The court's recognition of a child's "privilege" to enter the parental home was premised upon its conclusion that children possess a constitutionally protected "right" to parental care and custody. *Steinbach,* 101 Wn.2d at 463. The notion of a "right" on the part of the child, in turn, denotes a corresponding duty on the part of the parent.[5] This duty, in turn, has been defined as including the duty to provide shelter to one's minor children.[6]

It follows, therefore, that the "privilege" of a child to enter the parental home, as recognized by the court in *Steinbach,* is more appropriately labeled a "right." This right, in turn, derives from the parents' duty to provide parental care and custody to their minor children. It is axiomatic that such a duty cannot be unilaterally terminated by the party owing it.

Accordingly, the duties owed by a parent toward a minor child, and the rights of the child derived therefrom, continue until such time as the child is emancipated or legal custody is placed in someone other than the parent. Because no transfer of legal custody took place here, we are constrained to conclude that Howe retained his right to enter his father's home on the occasion in question, despite

---

[5]*See Seattle Sch. Dist. 1 v. State,* 90 Wn.2d 476, 511–12, 585 P.2d 71 (1978); *see* Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning,* 23 Yale L.J. 16, 30–31 (1913).

[6]*See In re Adoption of Lybbert,* 75 Wn.2d 671, 674, 453 P.2d 650 (1969), stating that the general obligations of parenthood entail the duties to: (1) express love and affection for the child; (2) express personal concern over the health, education and general well–being of the child; (3) supply the necessary food, clothing, and medical care; (4) provide an adequate domicile; and (5) to furnish social and religious guidance.

his father's stated prohibition against his entry into the home.

Our conclusion finds further support in the Supreme Court's reasoning in *Steinbach,* about the effect of the ARP order upon the child's privilege to enter the mother's home. In concluding that the Alternative Residential Placement order did not terminate the child's privilege, the court stated that an ARP order ". . . does not result in a transfer of legal rights and duties such as occurs in termination of parental rights . . .". *Steinbach,* 101 Wn.2d at 463.

The existence of parental duties was further cited by the court in *Steinbach* as the basis for distinguishing an Illinois appellate case wherein a minor, whose parents had been relieved of legal custody, was convicted of burglary of the parental home. The majority in *Steinbach* stated:

> In determining whether there was sufficient evidence to justify a finding of unlawful entry, the Illinois court focused upon the fact that legal custody of the juvenile had been placed with the State. No change in legal custody occurred in Terri's [dependent child] case.

*Steinbach,* 101 Wn.2d at 463, citing *In re G.L.,* 73 Ill. App. 3d 467, 391 N.E.2d 1108 (1979).

Even though we reach the conclusion that a legal termination of a parent's "duties" is a condition precedent to the termination of a minor child's "right" to enter the parental home, we are inclined toward the view that parents have a right of possession of their home superior to that of the child.[7] We do not suggest, nor should this opinion be construed as requiring a parent to submit to the tyranny of a minor child who seeks to enter the parent's home for an unlawful purpose such as theft. Under such circumstances, the parent may very well have the right to limit or even deny the child's entry into the home.

Should a child nevertheless gain entry to the home under such circumstances, however, the fact that the child enters for the purpose of committing a crime cannot convert the child's "right" of entry into an unlawful entry.

---

[7]*See In re G.L.,* 391 N.E.2d at 1110.

Were we to so hold, we would be merging the separate elements of the offense of burglary (*i.e.,* criminal intent and unlawful entry). This we cannot do. *See State v. Collins,* 110 Wn.2d 253, 256–57, 751 P.2d 837 (1988). A child who enters under such circumstances may, however, be charged with and convicted of any crimes he or she commits therein for which unlawful entry is not an element, such as theft or destruction of the parents' property.

In summary, we conclude that Howe's entry into his father's home was not unlawful, as that term is defined in the burglary statutes, notwithstanding the express admonitions of the father against Howe's return to the father's home and the fact that his entry was for the purpose of committing a crime.[8]

B. <u>Burglary of Aunt and Uncle's Home</u>: Howe contends, with regard to his entry into the home of his aunt and uncle, that their failure to expressly revoke his permission to enter their home, despite his theft of their truck, precludes a conclusion that his entry into the home was unlawful. We reject this contention for two reasons.

First, Howe had no "right" to enter the home of his aunt and uncle. Accordingly, his authority, if any, must be based on permission granted him by the Ackermans, said permission being revocable at will. In this regard, revocation of a privilege to enter a residence may be inferred from the circumstances of the case, even absent an express revocation. *State v. Collins,* 110 Wn.2d 253, 751 P.2d 837 (1988).

In *Collins,* the defendant had entered a residence, with the permission of occupants who were not related to the

---

[8]For this reason, we further reject the State's contention, based upon *State v. Collins,* 110 Wn.2d 253, 751 P.2d 837 (1988), that Howe's entry of the father's home exceeded an implied limitation on the father's consent to entry by the son, thus, rendering such entry unlawful. In *Collins,* the court held that otherwise lawful presence may become unlawful because of an implied limitation on, or revocation of, a privilege to be on the premises. *Collins,* 110 Wn.2d at 258. As noted above, however, Howe's authority to enter the parental home is in the nature of a "right," not a "privilege." Accordingly, no such limitations can be implied from the scope of the father's consent.

defendant, for the limited purpose of using the telephone. *Collins,* 110 Wn.2d at 254. Following his use of the telephone, the defendant raped one of the occupants and assaulted the other. The defendant was tried and convicted of burglary in the first degree, rape and assault. *Collins,* 110 Wn.2d at 255.

In affirming the defendant's conviction, the Supreme Court concluded, in part, that once the purpose for which the defendant was granted entry was accomplished, his license to be on the premises expired. *Collins,* 110 Wn.2d at 255. Similarly, the invitation which the Ackermans extended to Howe was limited to the purposes of permitting Howe to reside with them. Upon the termination of that residency, Howe's permission to enter their home expired.[9]

Second, even assuming Howe's permission to enter the Ackerman home had not expired, such permission was clearly limited in purpose. In *Collins,* the Supreme Court recognized an implied limitation upon the defendant's permission to enter the victims' home, although no such limitation was expressly communicated to the defendant. *Collins,* 110 Wn.2d at 260–61.

Similarly, the record before us supports an inference that Howe's permission to enter the Ackerman home was limited to the purposes of obtaining shelter and care. We do not find it reasonable to construe such a gratuitous invitation as a general invitation to all areas of their home for any purpose. Accordingly, Howe's subsequent entry of the

---

[9]The Supreme Court in *Collins* further recognized the theory of an implied revocation of a privilege to remain on a premises. *Collins,* 110 Wn.2d at 261. Such a theory would similarly support the conclusion that Howe lacked permission to enter the Ackerman home on the occasion in question given his prior conduct in having stolen the Ackermans' truck.

Ackerman home; and/or his presence in the home for purposes other than shelter and care, rendered such entry and/or presence unlawful.

We affirm Howe's conviction for the burglary of the Ackerman home but reverse the conviction for the burglary of the father's home.

WORSWICK, J., concurs.

REED, J. (concurring)—In the Hohfeldian[10] scheme of things, a "right" distinctively is of a higher order than a privilege, invitation, or license. In my view the burglary statute implicitly excludes anyone having a "right" to be on the premises, as for example one's home. One having a right to enter cannot be guilty of unlawful entry. The statute addresses only those who need some type of special permission in the way of invitation or license or are somehow otherwise privileged to enter—a fireman in case of emergency, *e.g.*

So long as defendant Howe's fundamental or natural right to enter his own home has not been altered by court order or by his emancipation, he cannot be guilty of unlawfully entering or remaining. Short of such a change in legal relationships, the parents' expressed prohibition will never serve to render unlawful such an entry or remaining.

I stop short of endorsing the majority's statement on page 70 that parents have a "superior" right of possession. I agree wholeheartedly that a parent need not submit to "tyranny," but I believe the remedy is not to cast the child into the street. There are other avenues—hedged about with due process—by which a parent may obtain relief in

---

[10]Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning,* 23 Yale L.J. 16 (1913).

74

such situations. I do, of course, agree that nothing precludes punishment for any theft or other crime committed by the child while on the premises.

With the above reservations, I concur.

Review granted at 115 Wn.2d 1001 (1990).