[Nos. 22928–1–I; 22929–0–I.   Division One.   April 16, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL
JENSEN, *Appellant*.

*Theresa B. Doyle* and *Deborah A. Whipple* of *Washington Appellate Defender Association,* for appellant.

*.Norm Maleng, Prosecuting Attorney,* and *Ruth E. Reukauf, Deputy,* for respondent.

SWANSON, J.—In this consolidated appeal, Michael Jensen challenges the sufficiency of the evidence supporting his convictions in juvenile court for second degree burglary and intimidating a witness.

## I
### SECOND DEGREE BURGLARY

At the fact–finding hearing, Vickie Jensen, Michael's mother, testified that she left her house for work at about 9:00 a.m. on June 10, 1988. Mrs. Jensen returned home shortly after noon and noticed that the living room was "messed up." Michael's father returned home shortly thereafter and discovered that the back door had been kicked in and that approximately $280 worth of silver ingots were missing. The Jensens later recovered the silver by paying $150 to a drug dealer. When confronted with the silver, Michael admitted having taken and sold it. Michael also told a friend, John Fradet, that he had ransacked the house and taken the silver.

The Jensens had been experiencing problems for some time related to Michael's drug and alcohol usage. At the time of the burglary, Michael was living in a trailer parked in his parents' front yard, provided by his parents because of his drug activity; the Jensens had taken away Michael's house key and made it very clear that he was not allowed in

the family home without one or both parents present. The Jensens testified:

> [w]hen we are there, Michael has permission to be in the house. But when we are not there, Michael has no permission and no keys to get in the house.

Counsel for Michael argued that, based upon the evidence, there was a reasonable doubt whether Michael had permission to enter the house. The trial court disagreed and found essentially that Michael entered the Jensen residence without permission with the intent to commit the crime of theft therein. Based on these findings, the court concluded that Michael Jensen was guilty as charged.[1]

---

[1]The pertinent portion of the trial court's findings of fact and conclusions of law is as follows, to wit:

"FINDINGS OF FACT

". . . .

"II.

"On June 10, 1988, the respondent entered or remained unlawfully in a building located at 608 S.W. 142nd Street, Seattle Washington (the Roy Jensen residence), with the intent to commit the crime of theft therein.

"III.

"On June 10, 1988, the respondent was present inside the Roy Jensen residence located at 608 S.W. 142nd Street, Seattle, Washington, without permission.

"IV.

"On June 10, 1988, the respondent resided in a trailer on the property of his mother and father, Roy and Vicki Jensen, at 608 S.W. 142nd Street, Seattle, Washington.

"V.

"Because of the respondent's drug activity, his parents provided living quarters for the respondent outside the family home.

"VI.

"The respondent was not allowed in the family home without one or both of his parents present. They took the respondent's residence key away and made it very clear they did not want him in the home unattended.

"VII.

"On June 10, 1988, the respondent kicked in the back door to the Jensen residence, entered the home, and took the family silver without permission when neither parent was home.

"CONCLUSIONS OF LAW

". . . .

"II.

"The respondent entered or remained unlawfully in a building without permission with the intent to commit a crime or crimes therein."

■ The test on review of a challenge to the sufficiency of the evidence is whether the appellate court can say, after reviewing the evidence in the light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime to have been established beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2871 (1979)). A challenge to the sufficiency of the evidence admits all inferences that can reasonably be drawn therefrom. *State v. McDaniels,* 39 Wn. App. 236, 239, 692 P.2d 894 (1984).

A person is guilty of second degree burglary if, "with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building . . .". RCW 9A.52.030(1). A person "'enters or remains unlawfully' in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(3).

Michael first contends that there was insufficient evidence to support the trial court's finding that he was not permitted to enter the house in his parents' absence. In particular, Michael points to his parents' testimony that he was permitted to enter the house under certain conditions, *i.e.,* to eat and shower and when he was drug free. He notes that there was no evidence that he was on drugs when he kicked in the back door and that he had expressed an intention to John Fradet on the morning of the burglary to enter the house to "munch."

Although the precise scope of the conditions governing Michael's access to his parents' house was not clearly developed at trial, both of his parents testified that Michael was not permitted to enter the house in their absence. This evidence was reinforced by the fact that the Jensens had taken away Michael's house key and that Michael had to break down the door to enter the house. In addition, the parents had provided alternative living quarters outside of the house. Other than the passing comment by Michael to John Fradet, there was no evidence of any intention to

enter the house for lawful purposes. Michael admitted to Fradet and to his parents that he had ransacked the house and stolen the silver. Under these circumstances, substantial evidence supports the trial court's findings of fact that Michael was inside the Jensen residence without permission, other living quarters having been provided because of his drug activity, and that Michael was not allowed in the family home in the absence of his parents. *Cf., e.g., State v. Schneider,* 36 Wn. App. 237, 241, 673 P.2d 200 (1983).

Michael next contends that the evidence was insufficient to show absence of permission to enter or remain because he was privileged as a matter of law to enter his parents' house. If he had a right or privilege to enter his parents' home, his entry was not unlawful and he could not be guilty of burglary. He maintains that such a privilege arises from statutorily based obligations imposed on parents to provide their children with food, shelter, and other necessities. As appellant notes, the Legislature has established the crime of family nonsupport. *See* RCW 26.20.035. Appellant suggests that parents are powerless to withdraw such a privilege unilaterally and that it can be terminated or restricted only by some formal court order or proceeding.

Appellant relies primarily on *State v. Steinbach,* 101 Wn.2d 460, 679 P.2d 369 (1984). In *Steinbach,* the juvenile defendant had experienced difficulties in living with her mother and petitioned for alternative residential placement (ARP) pursuant to RCW 13.32A. After the petition was granted, the mother informed the defendant that she could not stay in the home because of the court order. Although the mother told the defendant that she could visit if she called first, she did not absolutely prohibit her daughter from entering the house.

Shortly after entry of the order establishing the ARP, the defendant and several companions entered the mother's home through a window and removed a number of items. The defendant was subsequently convicted of second degree burglary, and this court affirmed. *State v. Steinbach,* 35 Wn. App. 473, 667 P.2d 641 (1983).

On further review, our Supreme Court, in a 5–to–4 decision, reversed. *State v. Steinbach,* 101 Wn.2d 460, 679 P.2d 369 (1984). After recognizing that a child has a privilege to enter the family home, the court held that absent specific language to the contrary, an alternative residential placement order does not automatically terminate a child's privilege to enter the parental home, as it does not involve a transfer of legal rights and duties, such as occurs in termination proceedings. *Steinbach,* 101 Wn.2d at 463. The court further noted that the defendant's mother had never absolutely prohibited her from returning and that the defendant could therefore "assume that she was privileged to enter her parent's home." *Steinbach,* 101 Wn.2d at 464.

*Steinbach,* however, is distinguishable from the instant case. Here, there was substantial evidence to support the trial court's finding that Michael had no permission to enter his parents' home in their absence and that his parents "made it very clear they did not want him in the home unattended." Finding of fact 6. Thus, in light of his parents' clear prohibition, there is no basis here for Michael to assume he had any privilege to enter the home as did the defendant child in *Steinbach.*

We find no support in *Steinbach* for the broad absolute privilege urged by appellant. Nor has appellant cited any authority suggesting that a parent's statutory duty to provide for necessaries must take some particular form, *i.e.,* such as providing unrestricted access to the family home. *See In re Richard M.,* ___ Cal. App. 3d ___, 252 Cal. Rptr. 36 (1988). Here, the Jensens provided Michael with alternative living quarters in a trailer outside the family home. There was no contention or evidence presented below that this arrangement was in any way inadequate or in violation of any statutory duty of support. Nor did Michael attempt to raise some type of necessity defense.

In *In re G.L.,* 73 Ill. App. 3d 467, 391 N.E.2d 1108 (1979), the court upheld the burglary conviction of juvenile who, after being remanded into the custody of a drug program, escaped and broke into his parents' home, stealing guns

and cash out of their bedroom. The youth's parents had told him not to return until he was off drugs and had never allowed him into their bedroom. The court rejected the defendant's claim that he had authority to enter the home because of a parent's duty to provide shelter, noting that this duty is merely a financial one once legal custody has been placed outside the home. The court further observed:

> Clearly, parents have a right of possession of their home superior to that of the child. The law does not require them to submit to the adolescent tyranny of a drug addict son who seeks to enter the home for the purpose of committing a theft.

*In re G.L., supra* at 470. We find this comment equally appropriate in the instant case, where parents have made adequate alternative living arrangements because of their son's drug activity and expressly prohibited the child from entering the home in their absence. We find that the provision of such alternative living arrangements, coupled with an express prohibition, was sufficient under the circumstances to render Michael's entry "unlawful" within the meaning of RCW 9A.52.030(1). We therefore affirm the second degree burglary conviction.[2]

We are not persuaded by this court's recent decisions in *State v. Walsh*, 57 Wn. App. 488, 789 P.2d 766 (1990), and *State v. Howe*, 57 Wn. App. 63, 786 P.2d 824 (1990). In *Walsh*, Judge Pekelis stated that "a formal legal proceeding is required before a child's privilege to enter the parental home can be terminated." *Walsh*, at 495–96. Such a requirement, while not unreasonable, is more appropriately imposed by the Legislature. The Legislature is in the best position to balance the competing policies and assess the consequences of such a requirement. Further, the parents in *Walsh* had made no provision for the child's food and shelter.

In *Howe*, the court determined that "the 'privilege' of a child to enter the parental home, as recognized by the

---

[2]Michael also asserts that the trial court erred in calculating the amount of restitution. A review of the sentencing transcript, however, indicates that the challenged amount was not for the burglary but for another matter.

court in *Steinbach,* is more appropriately labelled a 'right.'" *Howe,* at 69. This "right," which the court derived from "the parents' duty to provide parental care and custody to their minor children", continues "until such time as the child is emancipated or legal custody is placed in someone other than the parent." *Howe,* at 69. A parent who has provided adequate alternative living arrangements, however, has not "unilaterally terminated" the duty to provide parental care and custody. As stated above, we have found no authority suggesting that a parent's statutory duty to provide parental care and custody can be satisfied only by providing access to the family home. Except for *Walsh* and *Howe,* we know of no authority imposing the requirement of a formal legal proceeding to determine the child's right of access and the provision for support the parents must make.

Finally, until the Legislature chooses to act in this area, we believe it is appropriate to rely on prosecutorial discretion in charging crimes arising out of the family living situation. The exercise of such discretion is no less important in connection with charging the crimes committed inside the family home by a dependent child than it would be in charging burglary. Because we have no reason to believe that such discretion is routinely abused, we are not overly concerned by the hypothetical horribles discussed at oral argument.[3]

## II
### INTIMIDATING A WITNESS

Jensen was charged by information filed July 22, 1988, with intimidating a witness, a charge that arose out of the second degree burglary proceeding pending against Jensen. At the fact–finding hearing, Vickie Jensen testified that Michael was in "one of his moods" on July 21, 1988. On that morning, Michael received a notice in the mail that he had been charged with the second degree burglary of his

---

[3]Indeed, the apparent dearth of appellate decisions in this area may reflect the infrequency with which such charges are brought.

parents' home. Upon receiving the letter, he became "upset" and told his mother that the charge meant jail time and "I can't stand jail. It makes me go crazy." Michael eventually "worked himself up in a tizzy" and offered his mother $150, the amount his parents had spent retrieving the silver stolen in the burglary from a drug dealer, if she would "drop the charge or make it a lesser charge." According to Mrs. Jensen, Michael repeatedly tried to persuade her to "dismiss the case."

Mrs. Jensen further testified that when Michael "didn't get the answers that he wanted," he threatened her:

> He said that when I wasn't home, he would tear up the house and take anything of valuable—you know, that's valuable and just split. And then play the head games like coming back in the middle of the night, banging on windows, things like that.

Mrs. Jensen took the threat seriously, as Michael had done "that" before.

Michael Jensen denied having threatened his mother. He acknowledged that he was upset after receiving the letter, that he followed his mother around asking questions about the charge, and that he offered his mother $150. Jensen stated that he became "frustrated" when she would not answer any more questions and hit the piano a couple of times.

At the conclusion of the hearing, the trial court found Michael guilty as charged.

On appeal, Michael contends that there was insufficient evidence to support his conviction for intimidating a witness. A person is guilty of intimidating a witness

> if, by use of a threat directed to a current witness or a person he has reason to believe is about to be called as a witness in any official proceeding or to a person whom he has reason to believe may have information relevant to a criminal investigation, he attempts to:
>
> . . . .
>
> (c) Induce that person to absent himself from such proceedings.

RCW 9A.72.110(1)(c). Michael maintains that the record is devoid of evidence suggesting that he intended to induce

his mother to absent herself from the upcoming burglary proceeding. We agree.

Viewed in the light most favorable to the State, the evidence established only an offer of $150 and a threat to "tear up the house" for Mrs. Jensen to "drop the charge or *make it a lesser charge.*" (Italics ours.) We recognize, of course, that "[t]he literal meaning of words is not necessarily the intended communication." *State v. Scherck,* 9 Wn. App. 792, 794, 514 P.2d 1393 (1973) (construing former RCW 9.69.080, tampering with a witness). Here, however, the words "drop the charge" reflect only "a lay person's perception that the complaining witness can cause a prosecution to be discontinued." *State v. Rempel,* 114 Wn.2d 77, 83, 785 P.2d 1134 (1990) (insufficient evidence to support conviction for tampering with a witness, RCW 9A.72.120). The words "make it a lesser charge" tend to negate any inference that Michael was threatening his mother to absent herself from the burglary proceedings. We conclude that the sufficiency test was not satisfied.

In summary, appellant's burglary conviction is affirmed; the conviction for intimidating a witness is reversed.

SCHOLFIELD, J.—I concur in the result only for reasons stated in my dissenting opinion in *State v. Walsh,* 57 Wn. App. 488, 789 P.2d 766 (1990).

PEKELIS, J.—I concur in the reversal of Michael's conviction for intimidating a witness. However, I respectfully dissent from the affirmance of Michael's conviction for second degree burglary. Judge Swanson would hold that a parent may effectively terminate the minor child's right to enter the family home so long as this termination is communicated to the child and other provisions for the child's care have been made. For the reasons expressed more fully in my opinion in *State v. Walsh,* 57 Wn. App. 488, 789 P.2d 766 (1990), I would hold that an alternative residential placement order under RCW 13.32A or other appropriate court order is required before a child's entry into the

parental home can be deemed "unlawful" for purposes of criminal prosecution.

As the facts of this case demonstrate, the rule that Judge Swanson would establish does not lend itself to easy application. The trial court did make a specific finding of fact that the Jensens had "made it very clear that they did not want [Michael] in the house unattended." However, there was testimony that the Jensens had made these pronouncements in the past, but had then nevertheless tolerated Michael's subsequent "unprivileged" entries.

These facts illustrate that the parent–child relationship is frequently fraught with ambiguities and unenforced "ultimatums." It is precisely for this reason that judicial approval of the withdrawal of the child's privilege to remain in the family home is desirable. Unlike a parent's often ambivalent and equivocal pronouncement, the court's order cannot be misunderstood.

I find equally troubling the notion that the effectiveness of the parent's revocation of the child's privilege to enter depends on whether "appropriate alternative arrangements" have been made. This necessarily involves an after–the–fact assessment of whether the arrangements provided were "appropriate". Judge Swanson's opinion suggests that the defense of necessity could be raised by the juvenile defendant and in that manner the adequacy of the alternative arrangements would be litigated.

However, whether a parent has made "appropriate" alternative arrangements for a child is usually evaluated not by juries in a criminal case, but by the trial court sitting as a family court judge. Moreover, I continue to believe that whether alternative provisions are adequate is subsumed in resolution of the more basic question of whether the child's privilege to enter the home should be terminated at all. This question should be answered well in advance of any potential burglary prosecution and at that time the court should either approve some plan for the child's care or make a determination that the particular child has, in effect, emancipated himself.

Judge Swanson relies on *In re G.L.,* 73 Ill. App. 3d 467, 391 N.E.2d 1108, 1110 (1979) for the proposition that parents cannot be required to submit to the "adolescent tyranny of a drug addict son". Although I am in agreement with that proposition, it begs the question of how that "tyranny" should be eliminated. *In re G.L., supra,* does not appear to support the approach urged by Judge Swanson. G.L.'s *legal* custody had been placed outside the home prior to the child's forced entry into the home. Thus, the outcome in *In re G.L., supra,* is consistent with the rule I would adopt: a burglary prosecution is appropriate when *a court* has previously determined the legal relationship between the parent and child.

Finally, I disagree with the suggestion that we can or should rely on the prosecuting authority's good judgment in deciding which of these cases is appropriate for prosecution. Prosecutors are not social workers, and they require manageable standards to guide the reasoned exercise of prosecutorial discretion. It is the function of the family court, not the prosecutor and jury, to sort out delicate and complex family relations and the rights and duties flowing therefrom.

Review granted at 115 Wn.2d 1001 (1990).