[Nos. 57133–3, 57164–3, 57201–1.   En Banc.   February 28, 1991.]

THE STATE OF WASHINGTON, *Petitioner,* v. JOHN HOWE III, *Respondent.*

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL JENSEN, *Petitioner.*

THE STATE OF WASHINGTON, *Petitioner,* v. MICHAEL JAMES WALSH, *Respondent.*

*Gary P. Burleson, Prosecuting Attorney for Mason County,* and *Mike Clift, Deputy; Norm Maleng, Prosecuting Attorney for King County,* and *James M. Cline, Deputy,* for petitioner State.

*Theresa B. Doyle* of *Washington Appellate Defender Association,* for petitioner Jensen.

*Bertha B. Fitzer,* for respondent Howe.

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for respondent Walsh.

*Norm Maleng, Prosecuting Attorney for King County,* and *Ruth E. Reukauf, Deputy,* for respondent State.

UTTER, J.—The juvenile defendants in these three consolidated cases were each convicted of burglarizing their parents' homes. Each case raises the same central issue: When is a parental order to a juvenile to stay away from the parental home sufficient to establish the lack of privilege element of a burglary charge? We hold that a burglary conviction can only be sustained where the parent (1) expressly and unequivocally ordered the child out of the

parental home, and (2) provided some alternative means of assuring that the parents' statutory duty of care is met.

## I

■ Former RCW 9A.52.030(1) provides:

A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle.

The State must prove both intent to commit a crime and unlawful entry in order to prove second degree burglary. *State v. Steinbach,* 101 Wn.2d 460, 462, 679 P.2d 369 (1984). A person unlawfully enters a building when he is not then licensed, invited, or otherwise privileged to enter or remain. RCW 9A.52.010(3). If a person is privileged to enter the building, then he cannot be convicted of burglary. *Steinbach,* 101 Wn.2d at 462. The juveniles in each of these cases assert that they were privileged to enter their parents' homes by virtue of their parents' obligation to provide for their dependent children.

■ Parents have a statutory duty to provide for their dependent children. RCW 26.20.035(1)(a), (b) provides:

(1) Any person who is able to provide support, or has the ability to earn the means to provide support, and who:
(a) Wilfully omits to provide necessary food, clothing, shelter, or medical attendance to a child dependent upon him or her . . .
(b) . . . is guilty of the crime of family nonsupport.

The duty of the parent to provide for the child results in the child having a privilege to enter the family home. Therefore, the State can only prove burglary if the child's privilege to enter the home has been revoked.

This holding is supported by our decision in *State v. Steinbach, supra.* In *Steinbach,* a juvenile petitioned the court for alternative residential placement (hereinafter ARP) under the provisions of RCW 13.32A. Approximately 2 weeks after the court entered the ARP order, the juvenile entered her mother's home without permission and

removed several items. The trial court found that the juvenile entered the home with the intent to commit a crime and entered a judgment convicting her of second degree burglary. This court overturned the conviction. We held that the juvenile's entry into her mother's home was privileged, and therefore could not be unlawful. 101 Wn.2d at 462. In so holding, we noted that the ARP did not revoke the juvenile's privilege to enter the parental home unless it contained a specific provision doing so. 101 Wn.2d at 463. We declined, however, to decide whether a conviction for burglary is appropriate where either the ARP or the parent expressly prohibits the child from returning home. 101 Wn.2d at 464 n.1. That is the question before us in these consolidated cases.

The focal issue here is whether a parent can revoke the child's privilege to enter the parental home, and under what conditions is that revocation effective?

The statutory parental obligation to provide for a dependent child is limited. The "necessary" care mandated by statute is the minimum standard of the quality and quantity of food, clothing, shelter and medical care that a parent is required by law to furnish. *State v. Brown*, 52 Wn.2d 92, 94, 323 P.2d 239 (1958). The parent does not have to provide that care directly, as long as he or she assures that such care is provided to the child. *In re Richard M.*, 205 Cal. App. 3d 7, 15, 252 Cal. Rptr. 36 (1988). Thus, a parent fulfills her statutory duty when she provides alternative means for taking care of her child's necessities. Since the child's privilege to enter the parental home rises out of the parent's duty to provide for the child, once the parent fulfills that duty in some manner that does not require the child to have access to the home, the parent may revoke the child's privilege to enter. This revocation does not require a formal court proceeding, but it must be clearly and unequivocally conveyed to the child. The revocation can only be effective if the parent has first met his or her statutory duty to provide the necessary care for the child.

## II
## State v. Howe

In August 1986, John Howe III[1] moved to Shelton to live with his father. Prior to that, John lived with his mother in Alaska. Shortly after arriving in Shelton, John and his father began having difficulties. These difficulties eventually led John to move out of his father's house and into the house of his aunt and uncle, the Ackermans.

Police subsequently arrested John for taking the Ackermans' car without their permission. John was placed in juvenile detention, and while in detention, John's father told John he was no longer welcome in his father's home. After his release from detention, John moved into a foster home. His father again told John that he could not return home until such time as he could exhibit law–abiding behavior.

While in foster care, John entered his father's home through an unlocked door and took his father's car, boat, canteen and some gas. John was subsequently arrested and found guilty of burglary and several other crimes not relevant to this appeal.

Division Two of the Court of Appeals reversed the burglary conviction. *State v. Howe,* 57 Wn. App. 63, 786 P.2d 824 (1990). Judge Alexander, writing for the majority, interpreted *State v. Steinbach, supra,* as recognizing that a child has a "right" to enter the parental home. The majority then concluded that a parent cannot unilaterally terminate that right, and that John's entry into his father's home was, therefore, lawful. We disagree.

The Court of Appeals correctly concluded that the privilege the child has to enter the parental home derives from a parent's duty to provide for the care of minor children. 57 Wn. App. at 69. As noted above, the parent's statutory duty is set out in RCW 26.20.035(1)(a). John's father met that

---

[1]While this court normally does not use the names of juveniles, in each of these cases the names were used in the court below and are matters of public record.

statutory duty. He informed the State that John could not return home, and he took John to a state–appointed shelter. By doing so, John's father fulfilled his statutory duty. John was placed in foster care, and he was at no time without the necessities the statute requires. John's father also explicitly told John that he could not return to his house. The trial court found that John's father clearly indicated to John that he was no longer welcome in his father's home, and that John knew and understood his father's communications.[2] That fact distinguishes this case from *Steinbach.*

Since John's father fulfilled his obligations under RCW 26.20.035(1), he had the power to revoke John's privilege to enter the house. This revocation is not a "unilateral termination" of the child's rights. The revocation can only be done after the parent insures that the child's rights are protected. John's father made the revocation effective by expressly and unequivocally telling John that he could not return to the house. Since his father revoked that privilege, John's entry into the house was unlawful. We therefore reverse the Court of Appeals and affirm the juvenile court's finding of guilt.

## State v. Walsh

In early October 1987, Lucille Walsh left her 16–year–old son Michael home alone when she went out of town on business. While she was away, Michael had a keg party at the family home. An estimated 50 to 150 people attended the party. The police were called to the party, and one child was taken away in an ambulance. Some of Lucille Walsh's furniture was smashed.

Over the course of the next few weeks Michael's behavior grew out of control. On October 20, Ms. Walsh came home early and found Michael at home with some of his friends. At the time Michael was supposed to be at school. Ms. Walsh asked Michael to leave, but he refused and she went back to work. When she returned home that night Michael

---

[2]Finding of fact 18.

was gone. The next morning Ms. Walsh had the door locks changed. Michael had not come home the night of the 20th, and there is nothing in the record to indicate Ms. Walsh knew where he was. She did not give him any money or suggest any alternative living arrangement. Ms. Walsh simply locked Michael out of the house. At the time Michael had no other relatives in the area.

When Ms. Walsh returned home on the 21st, the day the locks were changed, she discovered someone had entered the house through a window in Michael's bedroom. She concluded that Michael was the intruder because his dirty clothes were on the floor, the shower had been used, and Michael's toothbrush was wet. She did not notice anything missing from the house.

On the 22nd, Ms. Walsh returned from work and again discovered that someone had been in the house. As before, Michael's dirty clothes were on the floor and his toothbrush was wet. She also discovered that 10 $1 bills were missing from a stack of 25 bills that she kept in a dresser drawer. Several silver and commemorative coins were missing from the same drawer. That night Michael returned home and asked to spend the night. Ms. Walsh gave him a sleeping bag and told him to sleep on the porch. She did not ask him about the missing money.

On October 23, a neighbor called police and reported a break–in at the Walsh home. Police discovered Michael and some friends in the house and arrested them for burglary. During a search incident to the arrest, police found several silver coins in Michael's possession. Ms. Walsh later identified the coins as the ones taken from her drawer on the 22nd.

On October 30, Ms. Walsh opened her monthly bank statement. She discovered a canceled check that she had not written. Michael later admitted that he and some friends had taken the check and used it to buy pizza.

Following a fact–finding hearing, the juvenile court found Michael guilty of burglary for the October 22 break–in.[3] Division One of the Court of Appeals reversed the burglary conviction. *State v. Walsh,* 57 Wn. App. 488, 789 P.2d 766 (1990).

Judge Pekelis, writing for the majority, recognized the competing societal interests inherent in these cases. As she noted:

> Parents undeniably have an interest in preserving the security and tranquility of the family home from destructive, out–of–control teenagers. However, society has a comparable interest in ensuring that children are provided with basic needs, such as food, shelter and clothing.

57 Wn. App. at 494. That societal interest is reflected in RCW 26.20.035(1)(a). The State argued that society's interest in the child's welfare can be met by allowing the child to raise a necessity defense to the burglary charge. We agree with Judge Pekelis, however, that such a solution would saddle the courts with the difficult task of evaluating the competing interests on a case–by–case basis. 47 Wn. App. at 495. We therefore reject the State's argument.

Judge Pekelis also correctly concluded that a parent cannot unilaterally revoke the child's right to enter the parental home unless the parent has met his or her statutory duty to provide for the child's necessities. 57 Wn. App. at 495. While we agree with her reasoning, we disagree with her resolution of the problem. Judge Pekelis would require parents to provide some alternative means for their child's care by obtaining a formal court order. 57 Wn. App. at 495–96. We believe society's competing interests are better served by allowing the parents to make the initial choice of how to provide the statutorily required care for their children. If the parents make adequate arrangements for their child's care without the necessity of an ARP, we see no reason for the courts to interfere with those arrangements.

---

[3]The court also found Michael guilty of other crimes not relevant to this appeal.

We stress that our holding should not be taken as an abdication of the court's responsibility for protecting the rights of children. Our holding simply reflects our belief that, where the needs of the child are adequately provided for, the parents should make the initial decision of how to provide for their children. Until the Legislature clearly indicates that such decisions should be made by the courts, we believe it is wiser to leave the initial decision to the parents.

Although we disagree with the Court of Appeals resolution of the issue, we affirm its reversal of Michael Walsh's conviction. Ms. Walsh did not meet her statutory duty to provide for Michael's care. She locked him out of the house without arranging for a place for him to stay. She did not give him any money or food. All of his personal belongings, including his clothes, were still in the house. Ms. Walsh knew that Michael did not have a job and had no relatives he could turn to for shelter. Since she failed to fulfill her statutory duty to provide for Michael, she could not revoke his privilege to enter the family home. Therefore, his entry was lawful, and his conviction is reversed.

### State v. Jensen

In the spring of 1988, Michael Jensen's parents placed him in a temporary home through the Department of Social and Health Services. They did this because they could not deal with Michael's drug problem. Some time after that Michael left the temporary home and began living in a trailer parked in front of the family home. His parents allowed him into the home to eat and to shower, but Michael did not have a key to the house. The juvenile court found that his parents explicitly told Michael he could not enter the house unless one of his parents was there.

On June 10, 1988, Michael broke into his parents' house by smashing the back door. He stole 40 ounces of his father's silver. A juvenile court found him guilty of burglary. Division One of the Court of Appeals affirmed the

conviction. *State v. Jensen,* 57 Wn. App. 501, 789 P.2d 772 (1990). We affirm.

The Jensens met their statutory duty of care for Michael. As Judge Swanson found, they provided Michael with alternative living quarters and there was no evidence that they failed to meet their statutory duty. 57 Wn. App. at 506. Additionally, the Jensens clearly told Michael he could not enter the home unless one of his parents was present.[4] Thus, they met both of the requirements for revoking Michael's privilege to enter the house. They told him explicitly that he could not enter and they met their statutory duty of care. Therefore, we affirm his conviction.

Our holdings in these cases are supported by cases from other jurisdictions. In *In re G.L.,* 73 Ill. App. 3d 467, 391 N.E.2d 1108 (1979), the trial court found a 15–year–old guilty of burglarizing his parents' home. At the time of the burglary, G.L. was committed to a drug rehabilitation program. In affirming the conviction, the court of appeals emphasized that G.L.'s parents had expressly forbidden him to enter their home. The court also noted that the director of the drug rehabilitation agency, and not G.L.'s parents, had legal custody of G.L. 73 Ill. App. 3d at 469. Thus, the court concluded that the parents' duty to provide for G.L. was reduced to a financial duty. The court then held that the parents had a superior right of possession to the family home, and that G.L.'s entry was unlawful. 73 Ill. App. 3d at 470. This holding comports with our decision. G.L.'s parents explicitly told him he could not enter their house, and G.L.'s needs were taken care of by his placement in the drug rehabilitation program.

In *In re Richard M.,* 205 Cal. App. 3d 7, 252 Cal. Rptr. 36 (1988), the juvenile was committed to a youth facility as a ward of the court. He escaped from the facility and broke into the apartment of his father and stepmother. He took several items belonging to his stepmother, and a trial court subsequently found him guilty of burglary. The Court of

---

[4]Finding of fact 6.

Appeals affirmed the conviction and rejected Richard M.'s claim that his parents' obligation to support him gave him the right to enter their apartment. The court held that the parental obligation to provide for necessities does not imply a possessory right in the parental residence. 205 Cal. App. 3d at 15. Again, this holding comports with our decision. Richard M.'s stepmother expressly told him he could not enter her home, and his needs were taken care of by his placement in the youth facility.

■ In conclusion, we hold that a juvenile can only be convicted of burglary of his family home if his privilege to enter the home is revoked. A juvenile's parents can only revoke his or her privilege to enter if they (1) do so expressly and unequivocally, and (2) provide some alternative means of assuring that the parents' statutory duty of care is met. We therefore affirm the Court of Appeals in *State v. Jensen, supra;* affirm the Court of Appeals as modified in *State v. Walsh, supra;* and reverse the Court of Appeals in *State v. Howe, supra.*

DORE, C.J., BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., and CALLOW, J. Pro Tem., concur.