[No. 24946-4-II. Division Two. October 27, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. DANNY LEE GILL, *Appellant*.

---

438

*Thomas E. Doyle,* for appellant (appointed counsel for appeal).

*Jeremy Randolph, Prosecuting Attorney,* and *Ruth Ellen Ammons, Deputy,* for respondent.

HOUGHTON, J. — Danny Lee Gill appeals his convictions of harassment and intimidating a witness, alleging multiple trial court errors, insufficiency of the evidence, and ineffective assistance of counsel. He further appeals the sentence on his convictions of third degree assault and taking a motor vehicle without permission. We affirm the witness intimidation conviction, reverse and dismiss the harassment conviction without prejudice, remand for an evidentiary hearing to classify a prior Texas conviction and for resentencing on the intimidation, assault, and taking a motor vehicle without permission convictions.

## FACTS

Early in the morning of April 18, 1999, Gill drove away from Connie Eaton's trailer in Eaton's truck. Gill and Eaton had been dating for about three years. Gill did not have Eaton's permission to drive the truck, although he considered the vehicle jointly owned.

Gill reappeared at about 5:00 a.m., without the truck, and fell asleep in the trailer after arguing with Eaton. Lewis County Sheriff Deputy Mike Bailey appeared at the house of Louis Chancy, Connie Eaton's father, in response to a car theft complaint. Eaton's trailer was parked on Chancy's land. The sheriff department's dispatcher told Bailey that there was also a warrant for Gill's arrest.

Deputy Bailey found Gill asleep inside Eaton's trailer and, after a fight, he subdued Gill with the use of handcuffs and pepper spray. In between his arrest and removal from the trailer, Gill told Chancy "wood would burn," which

Chancy understood as a threat to burn his barn or house. Report of Proceedings (RP) at 82-83.

Sometime around April 27, 1999, Gill gave Eaton a letter in which he alternatively sought to reconcile their differences and have Eaton "get all of [the] charges dropped immediately," demanded she transfer certain property to him and get all charges dropped, or "[d]o nothing and see what [he] can get done legally." Ex. 2, at 6.

Gill was charged by amended information with third degree assault, RCW 9A.36.031(1)(g); taking a vehicle without permission, RCW 9A.56.070; harassment, RCW 9A.46-.020(1)(a)(ii); harassment (domestic violence), RCW 9A.46-.020(2)(b), RCW 10.99.020(3); and intimidating a witness, RCW 9A.72.110.

At trial, defense counsel failed to object to a proposed jury instruction the State offered on the harassment charge. Although the amended information alleged harassment by threatening to damage the property of Chancy, the instruction also identified two additional uncharged alternative ways to commit harassment. The jury convicted Gill on all counts except the harassment (domestic violence) charge.

At sentencing, Gill stipulated that he had a prior Texas conviction for taking a motor vehicle without permission. In addition, the State relied upon a National Crime Information Center report to prove Gill had three felony convictions in Florida in 1987. Defense counsel objected, arguing that the report inaccurately identified the convictions as felonies, the State had not proven that the offenses were comparable with Washington offenses, and the State had not proven that the offenses were separate offenses rather than part of a continuing course of conduct. The trial court held an evidentiary hearing under RCW 9.94A.370, determined that the State had carried its evidentiary burden as to the Florida convictions, and used an offender score of 6 to calculate the sentence.

Gill appeals his convictions and sentence and this court granted accelerated review.

## ANALYSIS

## Harassment Conviction

### *Defective Information*

The harassment charge, Count IV of the amended information, stated in relevant part:

> And I, the Prosecuting Attorney . . . accuse the defendant of the crime of HARASSMENT, which is a violation of RCW 9A.46.020(1)(a)(ii) . . . in that defendant on or about April 18, 1999, in Lewis County, Washington, then and there threatened to cause physical damage to property belonging to another and placed Louis Chancy in reasonable fear that the threat would be carried out[.]

Clerk's Papers (CP) at 81.

Gill contends that the amended information failed to include all of the essential elements of the crime of harassment. He asserts that Count IV failed to allege that he "knowingly" made a threat or that he did so "[w]ithout lawful authority," in addition to failing to state that the person (Louis Chancy) who was placed in reasonable fear that the threat would be carried out is the same person whose property was subject to the threat of physical damage.[1]

A charging document must include all of the essential elements of a crime. *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). When a charging document is challenged for the first time on appeal, we liberally construe it in favor of validity. *Kjorsvik*, 117 Wn.2d at 105. Under the liberal construction rule, where a missing element may be fairly implied from the language within the information, it will be upheld as proper. *Kjorsvik*, 117 Wn.2d at 104. On review, we must answer two questions:

> (1) do the necessary facts appear in any form, or by fair

---

[1] In relevant part, RCW 9A.46.020(1) states: "A person is guilty of harassment if: (a) Without lawful authority, the person knowingly threatens: . . . (ii) To cause physical damage to the property of a person other than the actor[.]"

construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?

*Kjorsvik*, 117 Wn.2d at 105-06.

We agree with Gill that Count IV of the amended information lacked essential elements of the crime charged. Nevertheless, the State, relying upon *State v. Hopper*, 118 Wn.2d 151, 155, 822 P.2d 775 (1992) and *Kjorsvik*, 117 Wn.2d at 104, urges us to review other counts in the charging document to determine whether the missing elements in Count IV might be inferred from them.

In addition to harassment, Gill was charged with harassment (domestic violence). That count properly included the allegation that Gill "knowingly . . . threatened" and acted "without lawful authority." CP at 81. Thus, argues the State, "[t]he elements missing from [C]ount IV appear in their proper and complete statutory form in [C]ount III, which is within the body of the amended information. By examining the whole of page 2 of the amended information, the defendant was given notice of the missing elements." Br. of Resp't at 8 (citations omitted).

■ Although the State correctly notes that *Hopper* and *Kjorsvik* refer to the charging "document," a fair reading of those cases provides no basis for the proposition that elements can be plucked out of one count in a charging document and dropped into another. Therefore, we decline the State's invitation to pull missing elements from one count and insert them into another.

■ Because the amended information lacked essential elements, we need not address whether Gill was prejudiced. The remedy is reversal and dismissal without prejudice. *See State v. Green*, 101 Wn. App. 885, 6 P.3d 53 (2000).[2]

---

[2] Gill further contends that the trial court erred in instructing the jury on uncharged alternative means of committing the crime of harassment (Instruction No. 14) and that counsel was ineffective in failing to object to Instruction No. 14. Our reversal and dismissal without prejudice of the harassment conviction because of a defective information renders analysis of these contentions unneces-

## Intimidating a Witness

### *Sufficiency of the Evidence*

Gill next contends that there was insufficient evidence to convict him of intimidating a witness. He asserts that his 13-page letter to Eaton comprised all of the intimidation evidence against Gill and contains no legally proscribed threat.

 The test for determining the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence are drawn in favor of the State and interpreted most strongly against the defendant, and the truth of the State's evidence is irrefutably established. *Salinas*, 119 Wn.2d at 201; *State v. Craven*, 67 Wn. App. 921, 928, 841 P.2d 774 (1992). Circumstantial evidence is no less reliable than direct evidence, and criminal intent may be inferred from conduct where "plainly indicated as a matter of logical probability." *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

A person is guilty of intimidating a witness when he, by use of a threat against a current or prospective witness, attempts to:

(a) Influence the testimony of that person;

(b) Induce that person to elude legal process summoning him or her to testify;

(c) Induce that person to absent himself or herself from such proceedings; or

(d) Induce that person not to report the information relevant to a criminal investigation . . . , not to have the crime . . .prosecuted, or not to give truthful or complete information relevant to a criminal investigation . . . .

RCW 9A.72.110(1).

---

sary. Moreover, the State concedes the trial court erred in instructing on uncharged alternative means.

A review of the letter discloses the following relevant comments:

> You should read this in its entirety or suffer the consequences of not doing so. . . . If you make the wrong decision, [this letter] will be forwarded to [various law enforcement agencies].

> . . . You are facing the following charges if you don't comply with my requests, all of which can be proven with evidence at various state and county offices in California and WA. [List of crimes].

> . . . .

> Connie, *it's your choice*. This is your last chance to prevent *serious* problems for yourself and whoever is a part of your life. . . . Don't blow it. It will cost you too much in too many areas of your life. Mainly your *freedom* (ironically) *of choice*.

> . . . .

> . . . (charges have to be dropped)[.] All charges,

> Do nothing and see what I can get done legally. You will be shocked at how much it will hurt. . . .

> Remember, I can get half the value of everything in civil court anyway, not to mention you would sit and await trial in jail with no SSI after 30 days of a facility that provides everything for you. You can't run, because the feds will shut down your SSI when you are a fugitive (I'll make sure they re-member [sic] to). Plus, I'll do what I can to find you. Because I'm sure to beat all of these charges except maybe one. I know you are not crazy enough to come to court and lie after all I know.

> . . . .

> P. S. . . . Option # 1 is no longer available. I've had a change of heart. I never want to see you again. Transfer of property can occur through attorneys. You may visit or write me, but I never want to see you face to face again. The disgust would overwhelm me and I'm afraid I may do something that would disappoint my creator. There are times I'm compelled to seek revenge and it's so hard to give these feeling up to God, but I know I must. Please, for your safety, keep your distance unless

we see each other through the protection of a visit booth. Ex. 2, at 12-23.

■ "The jurors [are] required to consider the inferential meaning as well as the literal meaning of [communications]. The literal meaning of words is not necessarily the intended communication." *State v. Scherck*, 9 Wn. App. 792, 794, 514 P.2d 1393 (1973). Scherck attempted to dissuade a witness from testifying, observing the witness had a nice house in a nice neighborhood and that "[i]t would be a shame if anything happened to it." Further, Scherck said that if the case came to trial, it "would be very embarrassing for [the victim]." *Scherck*, 9 Wn. App. at 794.

Here, although Gill argues that he never explicitly threatened to inflict bodily injury or attempt to influence Eaton to speak untruthfully, the inferential meaning of the words is clearly threatening. Thus, Gill's letter is within the purview of *Scherck*. The evidence is sufficient to support Gill's conviction for intimidating a witness.

## *Failure To Give a Unanimity Instruction*

Gill also contends that the trial court erred in not requiring jury unanimity as to which alternative means supported the conviction of intimidating a witness.

■ To convict an accused of a crime, a unanimous jury must conclude that the accused committed the criminal act charged. CONST. art. I, § 21; *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *modified by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988). When a defendant is charged with committing a crime by alternative means and the evidence is insufficient to support each alternative means, the trial court must instruct the jury that it must unanimously agree on the specific means by which the defendant committed the crime. *State v. Savaria*, 82 Wn. App. 832, 840, 919 P.2d 1263 (1996). Although failure to instruct a jury on unanimity is presumed prejudicial, it will be found harmless if a rational trier of fact could find that each alternative means presented to the jury occurred

beyond a reasonable doubt. *State v. Camarillo*, 115 Wn.2d 60, 64, 794 P.2d 850 (1990).

The "to convict" instruction for intimidating a witness listed all possible means by which Gill could have intimidated a witness.[3] And no unanimity instruction was given. Thus, if there is insufficient evidence as to any individual means, the entire conviction must be reversed and the case remanded. *Savaria*, 82 Wn. App. at 840.

■ In the letter which forms the basis of the intimidation charge, Gill sought to have Eaton "get all of [the] charges dropped immediately." Ex. 2, at 6. Some courts have drawn fine distinctions based upon a defendant's request that a complaining witness "drop the charges" or "make it a lesser charge." *See, e.g., State v. Rempel*, 114 Wn.2d 77, 83-84, 785 P.2d 1134 (1990); *State v. Jensen*, 57 Wn. App. 501, 509-10, 789 P.2d 772 (1990), *aff'd by State v. Howe*, 116 Wn.2d 466, 805 P.2d 806 (1991). The *Rempel* court declined to "hold that the words 'drop the charges' cannot sustain a conviction if uttered in a factual context which would lead to a reasonable inference that the speaker actually attempted to induce a witness to withhold testimony." *Rempel*, 114 Wn.2d at 84.

■ Gill's demands are distinct from those in *Rempel* and *Jensen*. Gill appears to have understood that the complaining witness has no power to "drop the charges." However, a witness might seek to *get* the charges dropped, *however she can*. This is precisely what Gill sought of Eaton. It alone is sufficient to support each alternative means. Eaton was the State's key witness and either changing her testimony or avoiding testifying could prevent the State from proceeding. Gill's demand coupled with his threat to have criminal charges filed against Eaton and the

---

[3] The means listed in Instruction No. 18 included: (a) influence the testimony of that other person, or (b) induce that person to elude legal process summoning him or her to testify, or (c) induce that person to absent himself or herself from an official proceeding, or (d) induce that person not to report the information relevant to a criminal investigation, (e) induce that person not to have the crime prosecuted, or (f) induce that person not to give truthful or complete information relevant to a criminal investigation.

reference to his being "compelled to seek revenge" are sufficient evidence to support the jury's verdict on any alternative means.

## Sentencing[4]

### *Prior Florida Convictions*

Gill next contends that the State did not carry its burden of proving the existence of the prior convictions by a preponderance of the evidence.[5]

At sentencing, the State sought to introduce five prior felony convictions, including three 1987 Florida convictions.[6] The information that included the three prior convictions was obtained via a National Crime Information Center/Washington Crime Information Center (NCIC/WACIC) check. At sentencing, Gill denied that the July 8, 1987 "convictions" were actually felony convictions, and he further denied having an aggravated battery conviction dated August 17, 1987. In response, the trial court held an evidentiary hearing under RCW 9.94A.370.

Kelly Wichert of the Department of Corrections prepared the presentence investigation report. She expressed confusion and doubt as to whether the date for the aggravated battery was a conviction date or an offense date. She tentatively stated only the July 8, 1987 dates were convic-

---

[4] Gill did not assign error to his convictions of assault and taking a motor vehicle without permission.

[5] The State argues Gill did not comply with CrR 7.1(c) by providing three days' notice of intent to controvert the presentence report by the production of evidence. Resp. to Appellant's RAP 18.5 Mot. at 5. An "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). The State did not object below when Gill disputed the existence of his Florida convictions and we decline to address this issue raised for the first time on appeal.

[6] The dates and crimes are:

7/8/87 Aggravated Assault with Deadly Weapon
7/8/87 Aggravated Assault with Deadly Weapon
8/17/87 Aggravated Battery

tion dates. The bulk of the evidentiary hearing was devoted to establishing identity—a need obviated by Gill's own admission: "The disposition was misdemeanors. The disposition was misdemeanors on those. I'm not doubting it's me. It's the fact they are not felonies. The arrest was a felony, but the conviction was not felonies [sic]." RP at 213. Arguing before the court, Gill's counsel stated:

> The first issue is whether or not there's sufficient proof at all to establish convictions and I would establish that there's not. I think that in this situation the absolute minimum that the court can deal with is copies of the judgments and sentence. I don't know that they have to be certified copies, but I think there has to be some copy of the judgments and sentence. It can't just be a computer printout.

RP at 210.

The State argued there was sufficient evidence to establish identity, which was never seriously disputed, and it requested a brief continuance to obtain descriptions of aggravated battery and aggravated assault in Florida. The State did not present additional evidence except as to identity. It relied solely upon the NCIC report to prove that the Florida convictions were felonies. The trial court ruled, "[t]he proof of the convictions in Florida, the three that we are primarily concerned with here, is established by a preponderance of the evidence[.]" RP at 214.

 "In establishing the defendant's criminal history for sentencing purposes, the State must prove by a preponderance of the evidence that a prior conviction exists." *State v. Cabrera*, 73 Wn. App. 165, 168, 868 P.2d 179 (1994). "Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point." RCW 9.94A.370(2). "The best evidence of a prior conviction is a certified copy of the judgment. However, the State may introduce other comparable documents of record or transcripts of prior proceedings to establish criminal history." *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999) (citing *Cabrera*, 73 Wn. App. at 168). FBI rap sheets are admissible, although if their

accuracy as to specific convictions is challenged, "reliance on the rap sheet alone in the absence of full evidentiary hearing might [constitute] error." *State v. Drummer*, 54 Wn. App. 751, 757, 775 P.2d 981 (1989). The question here is whether reliance upon the rap sheet alone was error.

 The purpose of the evidentiary hearing is constitutional in nature. "Although facts at sentencing need not be proved beyond a reasonable doubt, fundamental principles of due process prohibit a criminal defendant from being sentenced on the basis of information which is false, lacks a minimum indicia of reliability, or is unsupported in the record." *Ford*, 137 Wn.2d at 481. Where the State offers no evidence in support of its position, it is impermissible to place the burden of refutation on the defendant. *Ford*, 137 Wn.2d at 481 (citing *United States v. Weston*, 448 F.2d 626, 634 (9th Cir. 1971), *cert. denied*, 404 U.S. 1061 (1972)). "The SRA [Sentencing Reform Act of 1981] expressly places this burden on the State because it is 'inconsistent with the principles underlying our system of justice to sentence a person on the basis of crimes that the State either could not or chose not to prove.'" *Ford*, 137 Wn.2d at 480 (quoting *In re Personal Restraint of Williams*, 111 Wn.2d 353, 357, 759 P.2d 436 (1988)).

Gill challenged the accuracy of the NCIC reports as to his convictions being felonies. The State produced no evidence other than of identity—that defendant Danny Gill was the same Danny Gill in the NCIC report. Although Gill did not produce any evidence to disprove the Florida convictions, he had no duty to do so. "A criminal defendant is simply not obligated to disprove the State's position, at least insofar as the State has failed to meet its primary burden of proof. The State does not meet its burden through bare assertions, unsupported by evidence." *Ford*, 137 Wn.2d at 482. Given the trial record and the lack of evidence other than the challenged NCIC report, the State failed to establish minimally reliable facts upon which to make a decision. Moreover,

[w]here a defendant specifically and timely objects that the evidence does not prove classification of prior out-of-state

convictions used to calculate an offender score, the sentencing court should conduct an evidentiary hearing to allow the State to adduce additional evidence of classification. If the State then fails to prove the requisite felony classifications, the State will not have another opportunity to prove the classifications on remand following appeal.

*State v. McCorkle*, 88 Wn. App. 485, 500, 945 P.2d 736 (1997), *aff'd*, 137 Wn.2d 490, 973 P.2d 461 (1999).

Although the *McCorkle* court applied this rule to a felony classification and not to the existence of a felony, *McCorkle* clearly holds that the State does not get a second chance to bear its burden if it fails to do so at trial after a specific objection is made. *McCorkle*, 137 Wn.2d 490, 497 (stating "where the State fails to carry its burden of proof after a specific objection, it [will] not be provided a further opportunity to do so."). The State was aware of Gill's objections and it failed to present actual copies of the judgment from a Florida court. Therefore, Gill's sentence is reversed and the matter remanded for resentencing without reference to the three Florida convictions.[7] *See McCorkle*, 88 Wn. App. at 500.

## Prior Texas Conviction

At sentencing, Gill stipulated to his 1989 Texas conviction of unauthorized use of a motor vehicle. But the trial court did not classify that crime or determine whether it had washed out before counting it as a prior conviction in determining Gill's offender score.[8]

■ The State acknowledges that the trial court did not classify the Texas conviction and asks us to "remand the matter for further hearing to classify the defendant's Texas

---

[7] Because we remand for resentencing without inclusion of the Florida convictions, we do not address Gill's alternative arguments as to these convictions regarding lack of comparability, RCW 9.94A.360(3), and continuing course of conduct.

[8] Gill also contends that his trial counsel's failure to object to his offender score amounted to ineffective assistance of counsel. But our remand of the matter renders analysis of this issue unnecessary.

conviction under Washington law [and] for recalculation of the defendant's offender score and for resentencing." Res. to Appellant's RAP 18.15 Mot. at 1. We agree that the proper recourse is to remand for an evidentiary hearing to classify the Texas conviction. *See Ford*, 137 Wn.2d at 486. (remanding case for resentencing after proper classification of prior convictions).

But classifying the 1989 Texas conviction will not end the sentencing court's inquiry. Before it can use the conviction in calculating Gill's offender score, the sentencing court must determine whether the conviction washed out. RCW 9.94A.360(2). After his 1989 Texas conviction, Gill committed no felonies until 1999, although he was convicted of numerous misdemeanors. A 1995 amendment to the SRA prevents the washing out of felonies if the defendant is convicted of "any crime," within a five-year period after release or conviction. Gill asserts this provision is not retroactive, citing *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999). Under *Cruz*, Gill asserts that the 1995 amendments to the SRA, which would potentially keep his 1989 felony "alive," are not retroactive and therefore do not revive a washed-out felony.

The State counters that the Legislature overruled *Cruz* when it passed Substitute Senate Bill (SSB) 6182:

> Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed.

LAWS OF 2000, ch. 26. § 2.

██ ██ But depending upon the trial court's classification of the Texas conviction, both Gill's and the State's arguments may be moot. For example, if the trial court finds that the prior conviction is comparable to a Washington Class B felony, then the conviction would not have washed out by 1995. If the sentencing court classifies the car theft in Texas as comparable to a Washington Class C felony, it must go on to determine whether the Texas conviction washed out. In making that determination, the

sentencing court will have to consider the arguments based upon *Cruz* and SSB 6182. As this issue is not ripe, we will not consider it. *See Walker v. Munro*, 124 Wn.2d 402, 414, 879 P.2d 920 (1994) (stating Washington courts do not issue advisory opinions).

In summary, we affirm the witness intimidation conviction and reverse and dismiss the harassment conviction without prejudice. We reverse the sentences imposed on the intimidation, third degree assault and taking a motor vehicle without owner's permission convictions. We remand the matter with instructions to classify the Texas conviction, to determine whether that conviction is properly included in the calculation of Gill's offender score, and for resentencing.

SEINFELD, J., and FOSCUE, J. Pro Tem., concur.