44 P.3d 857 (2002)
111 Wash.App. 317
STATE of Washington, Respondent,
v.
Darrell L. ANDERSON, Appellant.
No. 19609-7-III.
Court of Appeals of Washington, Division 3, Panel Eight.
April 23, 2002.
*858 Kevin L. Holt, Kennewick, for Appellant.
Andrew K. Miller, Scott W. Johnson, Kennewick, for Respondent.
SWEENEY, J.
This appeal is taken from convictions for two counts of intimidating a witness. At the heart of Darrell Anderson's appeal is his argument that he did not intend, nor did he communicate directly, the threats that prompted this prosecution. The statute, however, is clear that the threat can be communicated "directly or indirectly." RCW 9A.04.110(25); RCW 9A.72.110(3)(a). Accordingly, we affirm the convictions.

FACTS
Darrell Anderson convinced himself that Nelda Guajardo, an investigator with Child Protective Services (CPS), had altered a document. The State had placed his children in its custody. Mr. Anderson and his uncle met with Mrs. Guajardo to discuss the matter. The exchange was acrimonious.
Mr. Anderson called his community corrections officer, Carol Nickerson, and threatened Mrs. Guajardo: "Nelda is fucked and she better watch out." Report of Proceedings (RP) at 24. Ms. Nickerson told her supervisor, Rigoberto Guajardo, who is also Mrs. Guajardo's husband.
That evening CPS workers apparently woke Mr. Anderson's children during a random unscheduled check on them. Mr. Anderson's uncle responded by calling Mrs. Guajardo at home. He asked her what it was like to be woken up in the middle of the night, and what it was like to have her sleep disturbed. Mrs. Guajardo hung up.
Mr. Anderson called the Guajardo household a few minutes later. Mr. Guajardo answered and would not allow Mr. Anderson to speak with his wife. Mr. Guajardo hung up the phone without letting Mr. Anderson speak to Mrs. Guajardo. Mrs. Guajardo called the police.
Ina Carpenter, a child welfare case worker, began working with Mr. Anderson's family in October 1999. The State had placed Mr. Anderson's children in protective custody. They were returned to their mother, Dea Green, but later returned to foster care.
On April 9, 2000, Mr. Anderson wrote his mother a letter from jail. It read:
I'm afraid for a few people when I get out and find my boys in foster home. I will and I promise, I will go to prison for life for multiple MURDERS.... Ida [Ina Carpenter] is my first stop and Dea will be my last stop, with a few people in between. (ie foster parents) My boys will not live in the system like I did....
When I get out I'll try by the book once and only once to get my boys, then shit will hit the fan. I will not fuck around when it comes to them anymore.
Plaintiff's Ex. 1.
On April 11, 2000, police responded to a call over a dispute between Mr. Anderson's mother and Ms. Green. Mr. Anderson's letter was turned over to the police.
The State charged Mr. Anderson with two counts of intimidating a witness in violation of RCW 9A.72.110(2). One count was for threats regarding Mrs. Guajardo, and one count was for threats regarding Ms. Carpenter. Following a bench trial, the court convicted Mr. Anderson of both.

*859 INTIMIDATING A WITNESS

NECESSITY OF COMMUNICATION
Mr. Anderson argues that he never intended that his letter would be read by anyone other than his mother. He wrote on the top: "Throw this in the trash when done reading it please!" Plaintiff's Ex. 1. And Ms. Carpenter saw the letter only after the police took it involuntarily from Mr. Anderson's mother. And as for the phone calls, he argues that he never spoke to Mrs. Guajardo, only to her husband. And no threats were conveyed.
The State responds that Mr. Anderson's challenge fails because there is no requirement that the defendant intend that the threat reach the victim.
STANDARD OF REVIEW
The test here is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Potts, 93 Wash.App. 82, 86, 969 P.2d 494 (1998); State v. Bridge, 91 Wash.App. 98, 100, 955 P.2d 418 (1998). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. State v. Walton, 64 Wash.App. 410, 415, 824 P.2d 533 (1992). And we defer to the trier of fact. Id. at 415-16, 824 P.2d 533.
STATUTE
It is a crime to intimidate a witness: "A person also is guilty of intimidating a witness if the person directs a threat to a former witness because of the witness's role in an official proceeding." RCW 9A.72.110(2). A former witness includes "[a] person whom the actor knew or believed may have provided information related to a criminal investigation or an investigation into the abuse or neglect of a minor child."[1] RCW 9A.72.110(3)(c)(iv).
"Threat" means to communicate, directly or indirectly the intent:
(a) To cause bodily injury in the future to the person threatened or to any other person; or
. . . .
(j) To do any other act which is intended to harm substantially the person threatened or another with respect to his health, safety, business, financial condition, or personal relationships[.]
RCW 9A.04.110(25).
LETTER CONTAINING THREAT TO MS. CARPENTER
Mr. Anderson argues that the evidence is insufficient to support his conviction. He did not intend that his letter reach Ms. Carpenter. The question is whether that intention is necessary. And no Washington case directly addresses this question.
The issue has, however, been addressed in another contextintimidating a judge. State v. Hansen, 122 Wash.2d 712, 862 P.2d 117 (1993).
In Hansen, the court held that whether the defendant intended that his threats would reach the judge was irrelevant. Id. at 717-18, 862 P.2d 117. The court stated:
[W]hoever threatens a judge, either directly or indirectly, e.g., through a third person, because of an official ruling or decision by that particular judge, is chargeable under [the intimidating a judge statute]. The threat may ultimately find its way to the judge, but that is irrelevant with regards to the commission of the crime.
Id. at 718, 862 P.2d 117 (emphasis added).
The rationale in Hansen is equally compelling here. Indeed, there the pertinent statute says: "A person is guilty of intimidating a judge if a person directs a threat to a judge because of a ruling or decision of the judge in any official proceeding...." RCW 9A.72.160(1) (emphasis added). Similarly, the intimidating a witness statute states: "A person also is guilty of intimidating a witness if the person directs a threat to a former witness because of the witness's role in an official proceeding." RCW 9A.72.110(2) (emphasis *860 added). Both statutes use the identical action language, "if a person directs a threat." RCW 9A.72.160(1); RCW 9A.72.110(2). Both of these statutory schemes address the same subject matter and here the same purpose. See In re Pers. Restraint of Yim, 139 Wash.2d 581, 592, 989 P.2d 512 (1999) (statutes that relate to the same subject matter or have the same purpose should be read together).
RCW 9A.72.110(2) (intimidating a witness) requires no proof that the defendant intended his threats to reach the victim. Hansen is persuasive authority that such an intent is irrelevant. Hansen, 122 Wash.2d at 718, 862 P.2d 117. There was sufficient evidence to support Mr. Anderson's conviction for intimidating a witness based on the threatening letter. See Potts, 93 Wash.App. at 86, 969 P.2d 494.
TELEPHONE CALLS TO MRS. GUAJARDO'S HOME
Mr. Anderson next argues that (1) he never spoke directly to Mrs. Guajardo the night the calls were made, and (2) his statements to Ms. Nickerson were not threats and were never communicated to Mrs. Guajardo. And he directed any language toward Mrs. Guajardo's job, not her physical well-being.
Again, the fact that Mr. Anderson's threats were not made directly to Mrs. Guajardo is irrelevant. It is enough if threats are directed to a third party. Hansen, 122 Wash.2d at 718, 862 P.2d 117. Accordingly, the fact that Ms. Nickerson did not contact Mrs. Guajardo about the threatening phone call is irrelevant. As is the fact that Mr. Anderson spoke only to Mr. Guajardo the night he called and not personally with Mrs. Guajardo.
Next, in passing on the sufficiency of the evidence we consider the inferential meaning of the words he used. State v. Gill, 103 Wash.App. 435, 445, 13 P.3d 646 (2000) (citing State v. Scherck, 9 Wash.App. 792, 794, 514 P.2d 1393 (1973)). Mr. Anderson called his correction officer. He said that "Nelda is fucked and she better watch out." RP at 24. He argues this was directed toward Mrs. Guajardo's job. But when viewed in the light most favorable to the State, this is a threat directed at Mrs. Guajardo. See Potts, 93 Wash.App. at 86, 969 P.2d 494. Ms. Nickerson expressed concern for Mrs. Guajardo's safety because of the call. The evidence adequately supports the conviction.
We defer to the finder of fact. We include any reasonable inferences from the evidence in favor of the State. Walton, 64 Wash.App. at 415-16, 824 P.2d 533. When so viewed, the evidence here is sufficient to support the trial court's finding that Mr. Anderson threatened Ms. Carpenter and Mrs. Guajardo.
Affirmed.
WE CONCUR: BROWN, C.J., and KURTZ, J.
NOTES
[1] Mr. Anderson does not argue that either Ms. Carpenter or Mrs. Guajardo is not a former witness as defined by the statute.