IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34055-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JUSTIN RYAN GRAHAM, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Justin Graham was convicted of one count of intimidating a

witness under RCW 9A.72.110(1)(a). He appeals, arguing the evidence is insufficient to

support his conviction because there is no evidence he intended to influence the

witnesses' testimony. We affirm.

## FACTS[1]

On June 28, 2015, Justin Graham's neighbors observed him assaulting his

girlfriend and called the police. After law enforcement responded, Mr. Graham was

arrested and taken to a police car. During this process, Mr. Graham's brother, Brandon

---

[1] Because Mr. Graham appeals the sufficiency of the State's evidence, we construe
the facts and inferences therefrom in the light most favorable to the State. *State v.
Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Graham, arrived at the scene. Mr. Graham told Brandon[2] his neighbors, Don Maupin and

his girlfriend, had called the police on him. Mr. Graham also said, "You're dead," as he

passed by Mr. Maupin under police escort. 1 Verbatim Report of Proceedings (VRP)

(Sept. 28, 2015) at 141. Brandon subsequently confronted Mr. Maupin and repeated the

same warning.

In either late June or early July, Brandon went back to the apartment complex and

again confronted Mr. Maupin. This time, Brandon tried to attack Mr. Maupin with brass

knuckles. However, someone alerted Brandon that he was being recorded. Brandon then

left the scene, threatening Mr. Maupin that he would be back.

On July 2, 2015, the Graham brothers participated in a recorded jail call and

engaged in the following discussion:

> JUSTIN GRAHAM: Well I just talked to [Department of
> Corrections] today and I got, I got twenty days violation, that's it. But I'm
> trying to figure out what's up on the, on the [domestic violence] assault
> charge cause fuckin, uh, fuckin, Don and his girl, fuckin, are, are my
> witnesses, our witness saying that they fucking, that I, uh, they, they said all
> kinds of shit on my shit dude. They need to get their faces smashed in, both
> them.
> BRANDON GRAHAM: Yeah, I tried to run em over and fucking
> hop out the car and break his face, last night when there was I saw I was on
> camera so I had to take off, came back next morning, had him hemmed up,
> got my mother fucking (INAUDIBLE) but I need to get him off camera.

---

[2] For ease of reference, Brandon Graham is referred to by his first name.

JUSTIN GRAHAM: I know. Um, yeah, cause they, uh, and then I went to court and they're saying that Don, Don went there saying that I did all kinds of shit to [my girlfriend] and all bunch of weird of shit. But hey I was told that, uh, somebody in here told me that if you put money on my books on Fri[day] or on Saturday that I, uh, that they won't take it from me.

Ex. 103 at 6-7.

About a week after the call, Brandon returned to Mr. Maupin's apartment complex. He assaulted one of Mr. Maupin's associates and then turned on Mr. Maupin and punched him in the face. Brandon told Mr. Maupin, "This is for snitching on my brother." 1 VRP (Sept. 28, 2015) at 149.

Justin Graham was charged with one count of intimidating a witness in an attempt to influence the witness' testimony. RCW 9A.72.110(1)(a). He was found guilty after a bench trial. This appeal follows.

## ANALYSIS

A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to influence the testimony of said witness. RCW 9A.72.110(1)(a). The nature of the threat contemplated by the witness intimidation statute is very specific. It is not enough that the threat was made in an attempt to deter a witness from providing information to the police, as opposed to testifying in court. *State v. Brown*, 162 Wn.2d 422, 430, 173 P.3d 245 (2007). In addition, the statute does not

3

cover a defendant's ill-informed attempt to negotiate an out-of-court settlement with a victim witness. *State v. Jensen*, 57 Wn. App. 501, 509-10, 789 P.2d 772 (1990), *aff'd*, 116 Wn.2d 466, 805 P.2d 806 (1991). In evaluating the meaning of a defendant's statements, the trier of fact must consider both the inferential and literal meaning of the words used by the threatening party. *State v. Scherck*, 9 Wn. App. 792, 794, 514 P.2d 1393 (1973); *State v. Gill*, 103 Wn. App. 435, 445, 13 P.3d 646 (2000).

The State's evidence supports the trial court's finding that, in commenting to his brother that Mr. Maupin needed his face smashed in, Mr. Graham intended to influence Mr. Maupin's testimony at his upcoming trial.[3] During the recorded phone call, Mr. Graham did not merely state he wished to harm Mr. Maupin. He made threatening comments while referencing Mr. Maupin and his girlfriend as "witnesses" to his pending "[domestic violence] assault charge." Ex. 103 at 6. This context connects Mr. Graham's assaultive intentions with Mr. Maupin's anticipated testimony thereby permitting an inference that the threat to Mr. Maupin was motivated, at least in part, by a desire to influence Mr. Maupin's testimony.

---

[3] The fact that Mr. Graham's threat was communicated through a third party is no bar to the State's charge. *State v. Ozuna*, 184 Wn.2d 238, 247, 359 P.3d 739 (2015) (a threat is still a threat even if communicated to a third party and not the intended target).

No. 34055-4-III
*State v. Graham*

APPELLATE COSTS

In his opening brief, Mr. Graham requests this court decline to award appellate costs to the State. Because Mr. Graham has not complied with our general order requiring a report of continued indigency, we deny his request at this juncture. If the State seeks costs, Mr. Graham may attempt to seek relief under RAP 14.2.

CONCLUSION

The trial court's judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Korsmo, J.                                Siddoway, J.

5