# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53000-7-II |
| Respondent, | |
| v. | |
| WILLIAM RICARDO LOWE, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—William Ricardo Lowe and Susan Mantesta were dating and he was living with her temporarily. During an argument, Lowe assaulted Mantesta by choking her. Mantesta called 911, and while she was on the phone, Lowe said he would kill her and burn down her house before the police arrived. Mantesta testified that she understood this to be a threat intended to persuade her not to seek police assistance.

The State charged Lowe with several crimes, including witness intimidation, and the jury found him guilty of this charge. Lowe appeals his witness intimidation conviction, arguing that the State did not present evidence sufficient to prove beyond a reasonable doubt that he made the threat in an attempt to induce Mantesta not to report the assault to the police. Lowe also asks this court to strike the DNA collection fee in his judgment and sentence. The State concedes this fee should be stricken.

We affirm Lowe's witness intimidation conviction because sufficient evidence supported the jury's verdict. We accept the State's concession and remand for the trial court to strike the DNA collection fee from Lowe's judgment and sentence.

FACTS

In 2018, Lowe and Mantesta had been dating intermittently for about four years. In June 2018, Lowe and Mantesta had a heated argument in Mantesta's home. As the argument escalated, Lowe flipped over a coffee table in the living room, breaking a glass. Then, after getting up and going into the bathroom, Lowe, who is black, said to Mantesta, who is white, "All you white people are the same." Verbatim Report of Proceedings (Dec. 11, 2018) (VRP) at 297. Mantesta responded using a racial epithet.

Mantesta said that Lowe came immediately out of the bathroom and held her against a wall. Pressing his hands around Mantesta's throat, Lowe said, "'Say it one more time, I'll kill you. Go ahead, say it.'" VRP at 277. Mantesta testified that she could not breathe or speak. After about 10 or 15 seconds, Lowe let go.

Mantesta then asked Lowe to leave several times, but he did not go. Mantesta said she would call 911, and she did. Lowe stood close by Mantesta and could hear her end of the conversation. As Mantesta spoke with the dispatcher, Lowe said he would burn her house down and kill her before the police arrived.

Officer Kelly Clark found Mantesta waiting outside the house. Sergeant Kenny Driver also came to the house and took a written statement from Mantesta, who told Driver that during the 911 call, Lowe said that if she called the police she "would be dead when they got here and he would burn this house down." VRP at 326.

Lowe was arrested and charged with second degree assault, intimidating a witness under RCW 9A.72.110(1)(d), felony harassment, and third degree malicious mischief, all with domestic violence designations.

At trial, the jury heard a recording of the 911 call. Lowe could be heard yelling on the recording. Mantesta testified that she did not think Lowe would act on his threats, but she considered them "scare tactic[s]" designed "to get [her] not to call." VRP at 304.

The jury found Lowe not guilty of second degree assault and third degree malicious mischief. But the jury convicted Lowe of the lesser included offense of fourth degree assault, intimidating a witness, and felony harassment, each with a special verdict finding of domestic violence. Lowe had past felony convictions, but the trial court imposed the $100 DNA collection fee.

Lowe appeals his conviction for intimidating a witness under RCW 9A.72.110(1)(d). He also appeals the judgment and sentence provision imposing the DNA collection fee.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Lowe argues that the State's evidence was not sufficient to convict him of witness intimidation because the evidence did not establish that he attempted to induce Mantesta not to call the police. Lowe contends that "his plain words overheard on the phone call" were not enough to prove that he attempted to prevent Mantesta from reporting the incident. Br. of Appellant at 6. Lowe also argues that the evidence was insufficient to convict him of witness intimidation because Mantesta did not think he would carry out his threat and because he "did not interfere" with her 911 call. *Id.* We disagree and affirm his conviction.

Due process requires the State to prove beyond a reasonable doubt every element of a charged crime. *State v. Kalebaugh*, 183 Wn.2d 578, 584, 355 P.3d 253 (2015). "Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits

any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Heutink,* 12 Wn. App. 2d 336, 359, 458 P.3d 796 (2020) (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *Id.* (quoting *Salinas,* 119 Wn.2d at 201). Circumstantial evidence is no less reliable than direct evidence. *State v. Smith*, 185 Wn. App. 945, 957, 344 P.3d 1244 (2015). We defer to the jury on conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Pinkney*, 2 Wn. App. 2d 574, 580, 411 P.3d 406 (2018).

To convict Lowe of witness intimidation, the State had to present evidence sufficient to prove beyond a reasonable doubt that Lowe (1) used a threat, (2) "against a current or prospective witness," and (3) attempted to "[i]nduce [the witness] not to report . . . information relevant to a criminal investigation." RCW 9A.72.110(1)(d). A person makes a "'[t]hreat'" against a witness when they "communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time." RCW 9A.72.110(3)(a)(i).[1]

In assessing whether the defendant intimidated a witness, "'jurors [are] required to consider the inferential meaning as well as the literal meaning of [communications].'" *State v. Gill*, 103 Wn. App. 435, 445, 13 P.3d 646 (2000) (alterations in original) (quoting *State v. Scherck*, 9 Wn. App. 792, 794, 514 P.2d 1393 (1973)). The threat need not actually reach the witness for the jury to find that the defendant attempted to induce the witness not to report. *See State v. Anderson*, 111 Wn. App. 317, 322, 44 P.3d 857 (2002) (noting that the witness intimidation statute "requires no

---

[1] RCW 9A.72.110(3)(a)(ii) also includes situations where a person makes a statement constituting a threat under RCW 9A.04.110(27), but that alternative was not presented to the jury in this case.

proof that the defendant intended his threats to reach the victim," and affirming the defendant's conviction on the basis of a threatening letter that never reached the witness).

In *State v. Whitfield*, this court considered the meaning of the phrase "attempts to induce" in the similar context of witness tampering under RCW 9A.72.120(1). 132 Wn. App. 878, 897, 134 P.3d 1203 (2006). A person is guilty of witness tampering when they attempt to induce a witness to testify falsely or withhold any testimony. *Id.* We held that it does not matter whether the defendant was successful in their attempt to induce the witness to give false testimony: "Whitfield completed the crime of witness tampering when he attempted to induce [the witness] to give false testimony. It remains irrelevant whether he succeeded in his attempt." *Id*. at 898.

In contrast, in *State v. Savaria*, Division One held that the evidence was not sufficient to convict the defendant of witness intimidation by attempting to influence a witness's testimony under RCW 9A.72.110(1)(a) when the defendant walked by a window where the witness was meeting with the prosecutor and "menacingly glar[ed] at her and 'flip[ped] her off.'" 82 Wn. App. 832, 835, 840-41, 919 P.2d 1263 (1996). The court reasoned, "Savaria's actions . . . certainly evidenced his unhappiness that [the witness] was at the courthouse apparently willing to testify against him, but they did not provide a basis for the jury to conclude that Savaria was thereby attempting to influence the content of [the witness's] testimony." *Id.* at 841.

Lowe does not contest that his statements constituted a threat under RCW 9A.72.110(3)(a)(i)-(ii). Instead, he argues that the evidence was insufficient to support the jury's finding that he made the threat in an attempt to induce Mantesta not to report the assault to the police. Lowe contends that the plain words of the threat alone did not prove that he was attempting to induce Mantesta not to report the incident. But the threat did not have to succeed and the jury

was not required to rely solely on the plain words of Lowe's comment—it could infer intent from context and in conjunction with the other evidence presented at trial. *Whitfield,* 132 Wn. App. at 898; *Gill*, 103 Wn. App. at 445. In reviewing the sufficiency of the evidence, we draw reasonable inferences in favor of the State. *Salinas*, 119 Wn.2d at 201.

The State presented ample evidence that Lowe made his statement while Mantesta was in the process of reporting the incident to the police. Lowe himself testified he knew Mantesta was on the phone with 911 and he was close enough to hear what she was saying. The jury easily could have inferred from the context of Lowe's comment and Mantesta's testimony that he was attempting to scare Mantesta into hanging up the phone. And Mantesta testified that this was precisely how she construed the comment. "It was a scare tactic to let me know he was mad, to get me not to call." VRP at 304.

Unlike in *Savaria*, where the court held the defendant was not attempting to influence the witness's testimony when the proceeding was already well underway, Lowe threatened Mantesta's life *during* her attempt to report the assault. There was sufficient time for Mantesta to stop providing information to the police. Lowe testified that calling the police was "just not the way we handle things." VRP at 344. On cross-examination, Lowe acknowledged that he did not want Mantesta calling the police. Together, the evidence supported a reasonable inference that Lowe made the threat in an attempt to induce Mantesta to hang up the phone and stop reporting the assault to the police.

To the extent Lowe argues that Mantesta never believed he would carry out the threat and that he did not actually interfere with her 911 call, these arguments do not undermine the sufficiency of the evidence. Under *Anderson*, even a threat that never reaches the victim may be

6

an attempt to induce a witness not to report a crime. 111 Wn. App. at 322. And under *Whitfield*, an unsuccessful attempt to induce a witness to change their story is still an attempt to induce. 132 Wn. App. at 898. Whether or not Mantesta believed Lowe would act on his threats and whether he actually interfered with the 911 call have no bearing on the sufficiency of the evidence in this case.

We affirm Lowe's witness intimidation conviction.

## II. DNA COLLECTION FEE

Lowe argues that this court must strike the $100 DNA collection fee because he had past felony convictions, the State had already collected his DNA, and imposing the DNA collection fee was an impermissible discretionary legal financial obligation. Lowe has two felony convictions from 2005 and 2006. The State "checked its records and noticed that there is an indication that Lowe has previously provided a DNA sample." Br. of Resp't at 11. The State concedes that the DNA collection fee should be stricken. We accept the State's concession and remand for the trial court to strike the $100 DNA collection fee from Lowe's judgment and sentence.

No. 53000-7-II

CONCLUSION

We affirm Lowe's conviction for witness intimidation, but we remand to strike the DNA collection fee from his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, C.J.

Cruser, J.