# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71612-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL CONRAD FISCHER, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: June 8, 2015 |
| | ) | |

Cox, J. – When permission to enter premises is revoked or expires, entry thereafter is unlawful. In this prosecution for burglary, assault, and malicious mischief, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Daniel Fischer's prior permission to enter Adam Kronbeck's residence was revoked or expired when he entered the residence and assaulted Kronbeck. There was also sufficient evidence for a rational trier of fact to find that Daniel entered with intent to assault Kronbeck, maliciously caused damage to Kronbeck's door, and caused Kronbeck substantial pain and considerable suffering. We affirm Daniel's convictions for first degree burglary, third degree assault, and third degree malicious mischief.

In the spring of 2013, Kronbeck lived in a one bedroom, 600 square foot home in Everett, Washington. He testified at trial that he receives rent

assistance through a federal housing program. The program restricts visitor stays in the residence to a maximum of two weeks.

Just before Easter, Kronbeck's friend Rebecca Fischer called and said she, her husband Daniel, and their daughter had been kicked out of their current residence and needed somewhere to stay "for a couple of nights." Kronbeck said "a couple of days is fine." He also told them that visitors could not stay longer than two weeks under his housing agreement. Kronbeck did not give the Fischers a key to his house during their stay.

One day, the Fischers brought guests to the house without Kronbeck's permission. When Kronbeck expressed his displeasure, the Fischers compared him to their former landlord and said they were moving out. Daniel appeared to be "pissed off." The Fischers then packed some things and left with their friends. They left behind some clothes, canned food, toys, a stereo, a portable crib and a cat. Kronbeck testified that over the next week, he left messages with the Fischers "trying to make arrangements for their stuff" and indicating that he was "not a storage unit." He received no response.

In the early morning of April 10, Kronbeck decided to move the Fischers' remaining possessions out of his house and into his front yard. He left a message with the Fischers telling them what he had done and that they needed to come get their things. A few hours later, he heard noises in his front yard and then his back yard. He saw Daniel outside. He opened his back door briefly and

apologized to Daniel, saying "it's not all my fault. I had company." He then closed and locked the door.

According to Kronbeck, Daniel kicked in the locked door, damaging the door frame. He then pushed Kronbeck backwards into his living room and asked "Who the F else is here?" After checking to see who else was in the house, Daniel put Kronbeck in a one arm hold and repeatedly struck him in the face, causing injuries to his eye, nose, cheek, and lip. Kronbeck testified that he still had pain from the injuries and could no longer sleep on his right side due to the pain. Kronbeck testified that he never struck, pushed or threatened Daniel. He also testified that Daniel did not remove or inquire about any property when he was inside the house.

Police investigating the incident testified that Daniel denied entering Kronbeck's house. The police noticed swelling on Daniel's left hand, and he admitted being left handed. Neither Daniel nor Rebecca told police they needed something from inside the house or were looking for their cat.

Rebecca testified that Kronbeck never told them "you are out of here" or indicated they could not come back for their possessions. She admitted that Kronbeck never gave them a key to the house, that she and Daniel said nothing to Kronbeck about their remaining possessions when they left, that they never called Kronbeck about those possessions after they left, that they received but did not return Kronbeck's phone calls after they left, that Kronbeck's last message said "[your] stuff is outside and you better come get it," and that she

and Daniel were angry when they heard the message. She also testified that they could not have a cat at the motel they moved to and she had expected Kronbeck would give it away.

A jury convicted Daniel as charged. He appeals.

## SUFFICIENCY OF THE EVIDENCE

Daniel contends his convictions are not supported by sufficient evidence. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt."[1] "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant."[2] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[3]

### Burglary

To convict Daniel of first degree burglary under the instructions in this case, the State had to prove that, with intent to commit a crime against a person or property therein, he unlawfully entered or remained in a building and while entering or remaining assaulted any person.[4] Daniel contends the State did not prove that he unlawfully entered or remained or did so with the requisite intent. We disagree.

---

[1] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).
[2] Id.
[3] Id.
[4] Instruction 21; Clerk's Papers at 109.

A homeowner can expressly or impliedly revoke the right of a guest to enter or reside within his dwelling.[5] Permission may also expire once the purpose for which permission was granted is accomplished.[6] Viewing the evidence in a light most favorable to the State, a rational trier of fact could find that Kronbeck revoked the Fischers' permission to enter his home when, after they moved out and ceased communicating with him, he put their remaining possessions outside, told them to come get them, and locked the door in Daniel's presence. The facts also support a finding that the Fischers' permission to enter expired when they moved out and ceased communicating with Kronbeck. There was thus sufficient evidence for the jury to find that Daniel's entry was unlawful.

There was also sufficient evidence for a rational trier of fact to find that Daniel entered Kronbeck's residence with intent to assault him. The evidence indicated that he was angry at Kronbeck, forcibly entered his house, briefly looked to see who was present, and then, without provocation, assaulted Kronbeck. Contrary to Daniel's assertions, there was no evidence that he "entered the house in order to retrieve his remaining items." Kronbeck testified that Daniel made no inquiries about, or attempts to locate, any property once inside the house. There was thus sufficient circumstantial evidence for the jury to find that Daniel entered the residence with intent to assault Kronbeck.

---

[5] State v. Howe, 57 Wn. App. 63, 71-72, 786 P.2d 824 (1990), rev'd on other grounds, 116 Wn.2d 466, 805 P.2d 806 (1991); see State v. Collins, 110 Wn.2d 253, 261-62, 751 P.2d 837 (1988).

[6] Howe, 57 Wn. App. at 72.

5

*Assault*

Daniel next contends the evidence was insufficient for a rational trier of fact to find one of the elements of third degree assault. Specifically, he contends the evidence failed to demonstrate that the bodily harm he inflicted was "accompanied by substantial pain that extended for a period of time sufficient to cause considerable suffering."[7] Again, we disagree.

When asked if he experienced pain from his injuries, Kronbeck testified "Yeah, I did, quite a bit." He described it as "ongoing pain" and sensitivity from a fracture. Kronbeck testified that the pain prevents him from sleeping on his right side. When asked how long the pain lasted, he said "[u]ntil today." This evidence was sufficient to establish the requisite pain and suffering for third degree assault.

*Malicious Mischief*

Finally, Daniel contends his conviction for malicious mischief must be reversed for lack of evidence that he acted with malice when he damaged Kronbeck's door. He claims he "was motivated by his need to care for his family and fear of the loss of property when he entered Mr. Kronbeck's home and broke the door." But as noted above, the record not only fails to support that alleged motivation, but it indicates that Daniel's sole motivation was to assault Kronbeck. Because "malice" includes intent to injure another, the evidence was sufficient to show that Daniel maliciously caused the damage to Kronbeck's door.

---

[7] Instruction 7; Clerk's Papers at 95.

We affirm the judgment and sentence.

_____ Cox, J.

WE CONCUR:

_____          _____
Spearman, C.J.                                              Tau, J.